O’NIELL, J.
Plaintiff appeals from a judgment rejecting his demand for $1,900 damages for an alleged breach of contract for the sale of 300 head of cattle, and for $500 which plaintiff paid as part of the price of the cattle.
The defense is that defendant complied with his contract by delivering to plaintiff the 300 head of cattle. He did deliver more than 300 head of cattle. The only question at issue is whether the delivery was a compliance with the original contract or was a separate transaction.
The original contract was made verbally on or about the last day of February, 1017. The agreement was between defendant and the firm of Frazar & Crocker, of which firm plaintiff was the junior member, and he subsequently purchased his partner’s interest and succeeded the firm in business. There are several discrepancies between the testimony of plaintiff and that of defendant with regard to the details of the agreement. Plaintiff says that the agreement was to deliver exactly 300 steers, of which 100 were to be two year olds, at $27 per .head, 100 were to be three year olds, at $31.50 per head, and 100 were to be four year olds or older, at $37.-50 per head; and that all of the cattle were to come from defendant’s home herd, being the herd on the range surrounding his home. Defendant says that the agreement was to deliver, not exactly 300 head of cattle, but about that number, to be composed of two year olds, three year olds, and four year olds and older, and that he had the right to include cows as well as steers, the cows to be sold at the same price as the three year old steers. He denies that the cattle to be delivered were to be in the exact proportion of one-third two year olds, one-third three year olds, and one-third four year olds and older, but admits that the prices agreed upon were $27 per head for all two year olds delivered, $31.50 per head for all three year olds, and $37.50 per head for all four year .olds and older; and he avers that all cows delivered were to be paid for at the price of the three year old steers. He denies that he was obliged to deliver the cattle from his home herd, and avers, on the contrary, that it did not concern the purchaser whether the cattle came from his home herd or from any other place.
[1] Defendant delivered to plaintiff, in March, April, and May, 1917, 381 head of cattle, consisting of 112 two year old and 7S three year old steers, 131 cows, 24 yearlings, and 36 “culls.” The culls are defined as cattle which do not come up to the standard weight, for their age. The 36 culls and 24 yearlings were, of course, not included' in the original contract; but the remaining 321 head of cattle that were delivered were of the grades called for by the contract, provided cows were to be included. None of the cattle delivered came from defendant’s home herd. The first delivery, made on or about the 17th of March, 1917, was of 20 head of cattle which defendant bought from a'man named Jackson. The second delivery, made in the, early part of April, 1917, consisted of 20 two year old steers, two three year old steers, 4 cows and 24 yearlings, all of which defendant also bought from Jac'kson. Plaintiff paid defendant $16 per head for the yearlings, $27 per head for the two year old steers, and $31.-50 per head for the cows and three year old steers. Defendant had then delivered 46 head of cattle, not including the 24 yearlings. Thereafter he went to Mississippi for the purpose of buying cattle, and was accompanied by a man named Cochran, who intended to *577 buy sheep. While in Mississippi, defendant and Cochran formed a partnership for the purpose of buying and selling cattle, and it whs agreed between them that the firm should fulfill defendant’s contract with plaintiff. Having bought nearly 900 head of cattle in Mississippi, they agreed that defendant should remain in Mississippi and attend to the herding, loading, and shipping of the cattle, and that Cochran should return to De Bidder, where defendant had agreed to deliver the 300 head of cattle to plaintiff, and attend to the unloading and delivery of the cattle. It required then only 254 head of cattle to complete the delivery under defendant’s contract with plaintiff. When 311 head of cattle had been received at De Bidder and unloaded by Cochran, he found them in bad condition, having suffered for want of water and feed and because of the hardships of the journey. Considering the cattle, therefore, not fit for delivery under defendant’s contract with plaintiff, and knowing that he would yet receive far more than enough cattle to fulfill the contract, Cochran pastured the cattle, and undertook to sell the herd to other parties. He did not succeed in disposing of the cattle, but they had improved so much in appearance and in condition on the pasture that, on the 11th of May, 1917, plaintiff agreed to take the herd. The price to be paid for the two year olds was the same as in the original contract with defendant, that is, $27 per head; but it was agreed that the price of the cows should be $31 per head, which was 50 cents less than the original contract for three year' old steers, and that the price of the three year old steers should be $32 per head, which was 50 cents more than the original contract price. There were 125 cows and 75 three year old steers in the herd, a total of 200 head of that grade, which, if sold at the original contract price for three year old steers, $31.50 per head, would have amounted to $6,300; whereas the 125 cows at $31 and 75 three year old steers at $32, amounted to $6,275. Plaintiff therefore paid $25 less for the 200 head of cattle, composed of cows and three year old steers, than he would have paid under the original contract for three year old steers. There were in the herd 75 head of two year old steers besides 36 culls. The total price paid by plaintiff for the herd, excluding the 36 culls, was $8,300; ■ whereas the price would have been $8,325, if the parties had not deducted 50 cents per head for the cows and added 50 cents per head for the three year old steers. We agree with the conclusion of the district judge that this deduction of only $25, in the transaction involving $8,325, was such a slight deviation from the original contract price that it is not an indication that the delivery of the cattle was a separate transaction and not a compliance with the original contract.
[2] It was admitted by plaintiff, in his testimony in the case, that, it was a matter of no importance to him whether the cattle came from defendant’s home herd or from any other place, so long as they came up to the standard of weight and condition. His contention that the original contract was for the delivery of cattle from defendant’s home herd is important only because, if true, it would show that the cattle which were afterwards obtained by defendant from other sources were not the cattle called for by the original-contract. The evidence shows, however, that defendant did not have 300 head of cattle, but had in fact only about 150 head, in his home herd. Hence the district judge concluded, and we agree with his conclusiofi, that the original agreement did not require that the cattle should be delivered from defendant’s home herd.
There are some circumstances which support plaintiff’s contention that the delivery of cattle which was made by defendant was a *579 separate transaction, and not a compliance with the original contract. Eor example, when Cochran closed the deal to deliver the 311 head of cattle, he required a payment of $500 on the price. This indicated that he did not have in mind that plaintiff had already paid defendant $500 on the original contract price. But that circumstance is not at all conclusive, because Cochran was not a party to the original contract, and probably did not know that defendant had already received $500 on the price. Another circumstance tending to corroborate plaintiff’s contention is that, in his final settlement with Cochran, he deducted the $500 which he had already paid to Cochran, but did not deduct the $500 which he had previously paid to defendant. But that circumstance 'also loses much of its value as evidence when we consider that defendant was not a party to the settlement between plaintiff and Cochran, and that the latter probably did not know that defendant had received $500 on the original contract price. Thereafter, as soon as plaintiff made demand on defendant to deliver 300 head of cattle in compliance with the original contract, and informed defendant that he (plaintiff) had not deducted the $500 in his settlement with Cochran, defendant offered to return the $500, insisting that he had complied with his contract.
The only question at issue being one of fact, depending- mainly upon the credibility of the witnesses, we defer largely to the judgment of the district court; and, after a careful review of the testimony, we see no reason for setting aside the judge’s conclusion.
[3] After judgment was rendered, plaintiff’s counsel filed a motion for a new trial, to take the testimony of two witnesses,, to prove that defendant had as many as 300 steers in what is called his home herd. The court refused to grant the new trial, because both of the witnesses referred to had testified in the case, and one of them had sworn that defendant had only about 150 head of cattle in his home-herd. The purpose of asking that the witness should have another opportunity to testify was to allow him to explain that he meant that defendant had only reared about 150 head of cattle in liis home herd, but had also other cattle which he had bought and added to the herd, thus making a total of about 300 head of cattle in the herd. As the question of the number of cattle in defendant’s home herd was only a collateral issue, and as both of the witnesses named in the application for a new trial had had an opportunity to testify on that issue, there was no error in the judge’s ruling refusing a new trial.
[4, 5] It is admitted by counsel for defendant that plaintiff is entitled to judgment for the $500 paid to defendant on the original contract price. It is said that the judge’s failure to give judgment for that amount was a mere oversight. Defendant’s counsel, therefore, admit that we should render judgment against defendant for $500, but contend that he should not be condemned to pay the costs of appeal. If this error in the judgment were only a slight error, or if the amount were very small, we might feel justified in condemning appellant to pay the costs, in the exercise of our discretion under Act 229 of 1910. But the error is not so small as to justify invoking the statute and condemning appellant to pay the costs of appeal. Defendant made a legal tender of the $500 when the case was called for trial, on the 11th of October, 1917. Therefore plaintiff should pay the costs incurred in the district court after the tender was made.
The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that plaintiff recover of and from defendant $500, with interest at 5 per cent, per annum from judicial demand; that is, from the 25th *581 of July, 1917. Defendant is to pay all costs incurred in the district court previous to the taking of testimony, and is to pay the costs of appeal. Plaintiff is to pay the costs incurred in the district court on and after the llth of October, 1917; that is, subsequent to defendant’s tender of the $500.