[Worthen v. The State, ex rel. Verner, et al.]

# Worthen v. The State, *ex rel.* Verner, *et al.*

## Disbarment Proceedings.

(Decided July 25, 1914. Rehearing denied November 7, 1914.
66 South. 686.)

1. *Attorneys; Disbarment; Pleading and Practice.* —The proper method by which to invoke the ruling of the court on the objection to the disbarment proceedings that the verification was insufficient to comply with the provisions of section 2997, Code 1907, is by motion to strike the complaint.

2. *Same; Statute; Construction.*—The provisions of section 2997, Code 1907, are highly penal in character, quasi criminal, and should be strictly construed.

3. *Same; Complaint; Verification.*—A verification stating that affiant was informed of the contents of an accusation, and deposed that the allegations therein contained were "true to the best of his knowledge, information and belief" being intended for no purpose other than to put in motion the jurisdiction and judicial power, and having no bearing on the issues made by the complaint, was sufficient compliance with the requirements of section 2997, Code 1907.

4. *Same; Grounds.*—Under section 6312, Code 1907, the act of an attorney in offering to vote for a certain person as trustee in bankruptcy in consideration of the other's placing in his hands a certain claim for collection is ground for his disbarment, and the cancellation of his license.

5. *Same; Person; Claim Against Another.*—As used in section 6312, Code 1907, the word "person" includes any entity or individuals against which or against whom a liability may be made or established, and the terms "demand of any kind" and "claim against another" include a claim against a bankrupt.

6. *Same; Evidence.*—The evidence considered and held to show that the attorney procured a claim against a bankrupt in consideration of a promise that he would vote for another for trustee in bankruptcy.

7. *Affidavit; Definition and Kind.*—There are two kinds of affidavits; those which serve as evidence to advise the court in the decision of some preliminary issue, or the determination of some substantial right, and those which merely serve to invoke the judicial power.

8. *Statutes; Construction.*—In ascertaining a doubtful legislative intent, weight will be given to the practical effect which a proposed construction of a statute will have.

APPEAL from Tuscaloosa County Court.
Heard before Hon. A. H. ALSTON.

[Worthen v. The State, ex rel. Verner, et al.]

Proceedings by the State, on the relation of Verner, as solicitor, to remove G. B. Worthen from the list of practicing attorneys, and to revoke his license. From a judgment granting the relief prayed, respondent appeals. Affirmed.

The following are the charges or information referred to in the opinion:

C. Informants charge that said Worthen has violated the provision of section 6314, Code 1907, in this, that on, to wit, October 14, 1912, A. S. Vandegraaff, for and in the name of Washington Moody, as trustee, filed in the Tuscaloosa county court a bill of complaint against William Turner and others, and on, to wit, November 13, 1912, said Worthen filed in the office of the register of said court a demurrer to the bill of complaint in which he appeared generally as attorney for all the respondents named therein; that the said Worthen was not at that time, had not been, and has not been up to the present time, employed in any manner whatever by said George A. Weaver, one of the respondents, to represent him in said suit, and the said Weaver has never in any manner authorized the said Worthen to enter for or on his behalf any appearance whatever as attorney representing the said interest of Weaver.

D. Same as C.

G. Unprofessional conduct, in that, on October 22, 1912, Ira C. Lovelace and James W. Lovelace, individually and as copartners doing business under the firm name of J. W. Lovelace & Co., were adjudged bankrupt in a District Court of the United States for the Southern District of Alabama; that among the assets of said bankrupt estate was a soda fount which had been in the store of said bankrupts, they having purchased same from W. J. Dominick; that prior to

[Worthen v. The State, ex·rel. Verner, et al.]

the sale of same by Dominick to said bankrupts, said Dominick had executed a mortgage on said soda fount to one R. L. Griffin; that on October 23, 1912, Griffin entered the house of said bankrupts and took possession of the soda fount; that G. B. Worthen was acting as attorney for said bankrupts, and on October 26, 1912, he filed in the office of Campbell, referee in bankruptcy in said United States courts, a petition praying that said Griffin be cited to show cause why he should not be punished for contempt of court in removing said soda fount; that said Griffin was cited by referee aforesaid to appear before said referee at Selma, Ala., on November 23, 1912, to answer said contempt charge, and between October 26 and November 23, 1912, said Worthen accepted money, to wit, $25, from J. W. Dominick as his fee for service in having dismissed the contempt proceedings against said Griffin which he himself, the said Worthen, had instituted, and said Griffin was in fact released and discharged on the recommendation of said Worthen.

J. MANLY FOSTER, for appellant.

MCKINLEY, MCQUEEN, ALDRICH & SNOW, VANDE-GRAAFF & SPROTT, HENRY A. JONES, WRIGHT & FITE, P. B. TRAWEEK, WASHINGTON MOODY, E. L. DODSON, JAMES RICE. and CLARKSON & MORRISETTE, for appellees.

MCCLELLAN, J.—This is an appeal from a judgment of the Tuscaloosa county court removing G. B. Worthen as a practicing attorney in this state.—Code, § 3008. The trial of appellant resulted from proceedings instituted in virtue of Code, § 2997, by a large number of the attorneys resident of Tuscaloosa. That

section is as follows: "Proceedings Upon Information of Individual. If the proceedings are upon the information of an individual, the accusation must be in writing, setting forth the facts upon which the charges are based, verified by the oath of such individual, or some other person, taken before any officer authorized by law to administer oaths in or out of the state, that such facts are true, and must be presented to and filed in said circuit court, or city court, or court of like jurisdiction, accompanied by security for costs, to be approved by the judge thereof."—Code, § 2997.

The charges preferred were stated in nine lettered (from A to I) grounds. The affidavit appended to the charges was, in respect of its body, as follows: "Before me  *  *  *  personally appeared Fleetwood Rice, who, being by me first duly sworn, deposes and says that he is informed of the contents of the foregoing bill of complaint, wherein the state of Alabama, ex rel. C. B. Verner, et al., is complainant, and G. B. Worthen is defendant; and affiant further deposes and says, on oath, that the allegations therein contained are true, to the best of his knowledge, information, and belief."

There was a motion, by the respondent, to strike the complaint because of insufficient or defective verification, under the statute quoted. This was the proper practice to invoke the court's ruling on the objection.— *Sorrelle v. Elmes*, 6 Ala. 706; *Broadhead v. Jones*, 39 Ala. 96; *Preston v. Dunham*, 52 Ala. 317. The motion's material grounds were these: "The verification is insufficient in that it is made only upon the best of affiant's knowledge, information and belief; whereas, since the charges are made positively, the verification should be that the information is true to the knowledge of affiant."

"(3) The verification is not sufficient, and does not comply with the law, because it is required by law that affiant should state that the facts set up in the information are true."

Proceedings of this character, though imposing, for acts or omissions justifying removal, no other punishment than disbarment from the practice of law, are highly penal in character and are quasi criminal; and so, statutes relating thereto are to be strictly construed. —*State v. Quarles,* 158 Ala. 54, 48 South. 499.

The accusation or information prescribed by law as the inception and basis for the trial of the issue of removal or suspension vel non of an attorney from the practice of law in this state must be positive in its allegations.—Code, §§ 2991-2993, 2995-2998, et seq. The nature, character, and effect of the proceeding forbids a qualified accusation against the attorney charged. A charge for removal or suspension of an attorney, that was undertaken to be rested on averment in the complaint of information and belief, as is met with in chancery practice, would be insufficient, and subject to appropriate demurrer.

The statute (section 2997) exacts an affidavit to the effect that the "facts" averred "are true." The objections taken in the quoted grounds of the motion would, if sustained, enforce the construction, of the just mentioned provisions of the statute, that the affidavit could only be made by a person or persons having personal actual knowledge of the facts alleged; or, to state that result conversely, that information and belief would not afford the statute-prescribed verification of such accusation.

So far as affidavits of the general character usually employed in initiating judicial proceedings and in promoting them to interlocutory or final judgments or de-

crees, they are of two kinds, viz., those which serve—directly or by confirmation of the averments of a pleading—as evidence to advise the judicial mind which is to consider and decide some preliminary issue or to determine upon the substantial rights of litigants in a concrete case; and those which alone serve to invoke the judicial power, without having any office or function to subserve with reference to or bearing upon the determination of any preliminary or substantial issue by the court or officer charged with a judicial duty in the premises.—*Jacobs v. State,* 61 Ala. 448, 452. Of the first-mentioned class of affidavits are those considered in *Burgess v. Martin,* 111 Ala. 656, 20 South. 506, and in *Schilcer v. Brock,* 124 Ala. 626, 67 South. 473, (where the appointment of a receiver was prayed on facts averred in the bill) ; *Dennis v. Coker,* 34 Ala. 611 (where the affidavits presented were to sustain a claim) ; *Woodward v. State,* 173 Ala. 7, 55 South. 506 (where writ of injunction to abate a liquor nuisance was sought upon the facts alleged in the bill). The following of our decisions considered affidavits required to effectuate a mechanic's or materialman's lien, the statutes prescribing that the verification should be made by a person having knowledge of the facts: *Globe Iron etc., Co. v. Thacher,* 87 Ala. 458, 6 South. 366; *Leftwich Lumber Co. v. Florence, etc., Association,* 104 Ala. 854, 18 South. 48; *Florence, etc., Ass'n v. Schall,* 107 Ala. 531, 18 South. 108; *Long v. Pocahontas Coal Co.,* 117 Ala. 587, 23 South. 526.

The affidavit required by section 2997, ante, is of the nature of that thus described in *Jacobs v. State, supra*: "It is purely cautionary—a pledge of good faith in the commencement of the suit. * * *" The affidavit under view can serve and does serve no other purpose than to put the judicial power in motion. It

is without effect or bearing upon the issues made by the information. Its object in exaction is to prevent the initiation of disbarment proceedings without proper caution—fair consideration for him who is accused in the information. Given the preference of charges against an attorney, the entire office of the verification prescribed is to initiate a hearing thereon. There is no arrest; and there is no promise of imprisonment. The affidavit when made is not evidential in any sense. The statute prescribed no form for the verification. It does not command a verification by one having actual and positive knowledge of the facts alleged, as was the exaction in the case of mechanic's liens, before mentioned. It does not describe "the extent of the knowledge" the affiant shall possess (*Lay v. Clark,* 31 Ala. p. 409) in order to constitute a sufficient verification.

"The general rule is that an oath taken before a competent officer merely verifies the truth of the facts stated, according to the best knowledge, information and belief of the affiant."—*Pratt v. Stevens,* 94 N. Y. 387, 392.

Perjury may be predicated of an affidavit bearing the oath of truth according to the best of affiant's knowledge, information, and belief.—*Pratt v. Stevens, supra.* If the verification prescribed by the statute was interpreted as exacting the oath by one having actual, positive knowledge of the facts alleged, it is manifest that the purpose inspiring the proceedings for disbarment would be greatly embarrassed, if not entirely defeated. If the culpability of an attorney depended upon a series of acts or facts, as must be often the case, the contended for interpretation of the character of verification required by the statute cited would compel respective verifications by all persons who ac-

tually, positively knew the respective truth of each averment of fact set forth in the information. We cannot conceive that such was the legislative purpose in this statute. There are decisions, in other jurisdictions, cited upon brief for appellant, that appear to lead to a different conclusion in this matter. They have been considered, but do not persuade against the interpretation at which this court has arrived. The trial court correctly overruled the motion based upon defective or insufficient verification.

The trial court found that charges lettered A, C, D, and G were sustained. The report of the appeal will contain a summary statement of all those indicated, except that lettered A. Since charge A has, upon this review, been found to be sustained—thus requiring the affirmance of the judgment of removal of appellant—it is unnecessary to review questions argued that bear alone upon the other charges sustained by the trial court.

The information alleges that G. B. Worthen is an unfit person to be engaged in the practice of law as an attorney at law in the courts of Alabama and makes this charge, among others: "A. Informants charge that the said G. B. Worthen has violated the provisions of section 6312 of the Code of Alabama of 1907, in this, that on or about, to wit, the 1st day of April, 1913, the said G. B. Worthen did give, offer, or promise to give a valuable consideration to one C. R. Hamner as an inducement to said C. R. Hamner placing in the hands of said G. B. Worthen as an attorney a certain claim which the Rosenau Company of Tuscaloosa, Ala., had at that time against the estate of J. J. Langdon, who had been adjudged a bankrupt by the United States court."

[Worthen v. The State, ex rel. Verner, et al.]

The statute mentioned in charge A, so far as at present important, reads: "Any attorney at law either before or after action brought, who gives, offers, or promises to give a valuable consideration to another person as an inducement to placing in the hands of such attorney * * * a demand of any kind for the purpose of bringing suit or making claim against another person, * * * shall be guilty of a misdemeanor, and on conviction shall be fined a sum not exceeding one thousand dollars, and also be removed and disbarred from practicing as an attorney at law in this state. * * *"

The language of the statute, definitive of the acts condemned, is broad, unrestrictedly comprehensive. In the respect quoted it penalizes the giving, offering, or promising of a valuable consideration as an inducement to the commission to the attorney of a demand of any kind for the purpose of suit or for the purpose of making claim against another person. Giving to the statute the strict construction required in respect of penal laws (*Scott v. State,* 152 Ala. 63, 44 South. 544), we cannot accord to it a meaning that would exempt from its effect claims or demands against a bankrupt (already so adjudicated) or the estate of a bankrupt. The plain purpose and object of the statute is to prohibit an attorney from securing business by giving, offering, or promising a valuable consideration to another, to that end. As therein employed, "person," against whom a claim or demand is supposed to outstand, includes any entity or individuals, against which or against whom a liability may be claimed, made, or established. No other interpretation would comport with manifest spirit and clear letter of the statute. If it were denied application to bankrupts (already so adjudicated), no good reason could be assigned for de-

nying its application to any agency or court administering an estate or trust. The statute is not confined in application to demands for the purpose of suit; but, and in addition, casts its inhibitory effect over demands of any kind for the purpose of making claim against another. Claims against an already adjudicated bankrupt are of this class, regardless of whether an action thereon could be instituted or not. The fact that a bankrupt is required to schedule his debts cannot have bearing upon the matter. He may, for good or evil purpose, omit to list the demand of a creditor; nevertheless the creditor's demand may be the subject of a claim made against another. Furthermore, a discharge in bankruptcy may not follow from the adjudication. The adjudication of bankruptcy is not the final act of the court. The process of administration of a bankrupt's estate is in nature, not materially different, in respects presently important, from that observed in the administration of the estates of decedents. Creditors may present and press their claims, and in this service the legal profession largely engages, for satisfactory remuneration.

The evidence referable to charge A is not voluminous. C. R. Hamner and the appellant were the witnesses testifying in this connection. It is said in brief for appellant that the "appellant's testimony is substantially the sam as Hamner's." We quote all of Hamner's testimony that bears at all upon the issues made by charge A. It is as follows: "I live in Northport, and I am bookkeeper for the Tuscaloosa Mills and Rosenau Company. I know Mr. Worthen. The Rosenau Company had a claim against J. J. Langdon of Reform, Ala., who was thrown into bankruptcy last year. I had a conversation with Mr. Worthen with reference to that claim. Mr. Worthen came to the Rosenau Company of-

fice one morning and spoke to me about the appointment of a trustee in bankruptcy for J. J. Langdon, suggesting for said trustee a man who lived at Reform. He asked me what I thought about that man being appointed. I told him I did not think it a wise thing to do on account of that man being directly interested in the matter. Mr. Worthen then went to his office. During the conversation at the Rosenau Company's office, I told him that I wanted to be appointed trustee of the Langdon estate. He said he did not know that and left the office. During the day I went to his office to see him and see if I could not get him to vote for me as trustee. I told Mr. Worthen I wanted him to cast his vote for me. At that time Mr. Worthen was looking over the assets and liabilities of the estate, and he said to me, 'Mr. Charley, you know it is always customary that when an attorney or party holding claims against bankrupts votes for a trustee, he in turn will appoint that man his attorney.' I did not reply, and we talked a few minutes about the assets and liabilities of the Langdon estate, and Mr. Worthen, in a kind of smiling way, said, 'In other words, I scratch your back, and you scratch mine.' The Rosenau Company had a claim against the Langdon estate. After a few moments, Mr. Worthen said, 'You go ahead and bring the Rosenau claim here and file it with my others.' * * *"

On cross-examination the witness testified: "* * * Mr. Worthen had represented the Hosiery Mills in a great many bankruptcy proceedings and had represented the Rosenau Company in a few bankruptcy cases. D. L. Rosenau was the head of both concerns. Mr. Worthen never at any time offered to make me trustee if I would appoint [him] as attorney for the trustee. He never did tell me whether he would vote

for me, but said he would write his clients and see who they wanted as trustee. I never tried to induce him to vote for me by offering him anything. Mr. Worthen never did tell me that he would vote for me for trustee or give me any reward or consideration if I would file the Rosenau claim with him."

On redirect examination, the witness testified: "Mr. Worthen said, 'You scatch my back, and I will scratch yours', a few moments after I asked him to vote for me as trustee."

There can be no doubt from this evidence under the statute as we interpret it, that the demand belonging to the Rosenau Company—of which Hamner was the employee, the representative—was such a demand as the statute described. The commission of that demand to appellant's care and attention would have established the relation of attorney and client between appellant and the company with respect thereto. So, the question of fact is whether appellant gave, offered to give, or promised a valuable consideration to Hamner to induce the committal of the demand to his professional care and attention.

The necessary, unescapable inference from the evidence on this matter is that appellant offered—not in express terms, but by statements of unmistakable purport and meaning—to contribute, through the vote of claims in appellant's hands, to the selection of Hamner as trustee of the bankrupt estate, and that, if Hamner was so selected, the obligation, recognized by custom, would be on Hamner to designate appellant as the trustee's attorney in the administration of the estate. Hardly any expression of the purpose indicated, entertained by appellant, could have been more apt, more significant, and more comprehensive than that appellant employed when he stated the homely rule

founded in reciprocity, to be, 'You scatch my back, and I will scatch yours." The position of trustee under the Bankruptcy Act is a position carrying compensation of a monetary character for services rendered therein; and, in this instance, was a position desired by Hamner who so advised appellant. The impression necessarily conveyed to Hamner by what appellant said to him was that Hamner would profit in the vote of the creditors for trustee if he would commit the Rosenau Company's claims to appellant's care and attention; the appellant then having in his charge other claims against the bankrupt from which the right to vote in the creditors' meeting to select a trustee was a result. No ordinary man could have been otherwise impressed by what was said between appellant and Hamner. Not only so, but the custom to which appellant referred projected his intent and purpose to the obligation, inspired by gratitude, that would rest upon the trustee after he was chosen; an obligation that, when observed, would give appellant a valuable employment in the administration of the bankrupt estate.

Hamner's assertions that appellant "never at any time offered to make me trustee if I would appoint him as attorney for the trustee," or that "he never did tell me whether he would vote for me, but said he would write his clients and see who they wanted as trustee," or that he "never did tell me that he would vote for me for trustee or give me any reward or consideration if I would file the Rosenau claim with him," consist entirely with the view that, while none of these things were expressly stated by appellant, they were so plainly indicated by what was said by appellant that, aside from the apparently wise caution not to explicitly utter them, it was unnecessary to the conveyance of the idea, the communication of his purpose, and the

real effectuation of his object for him to expressly do so. His assertion of purpose to refer the inquiry to his client as to whom they desired for trustee manifestly did not qualify the proposal his statements presented to Hamner. There was no assurance thereby given or promised that he would not interpose his influence, enhanced by this relation to them, to affect the choice his clients would make; and, when considered with reference to the purpose obviously dominant in his mind it is not possible to presume that he would have withheld his opportunity to his own financial disadvantage. His acts and statements expressed an offer to promote Hamner's pecuniary interests with the distinct expectation that his own would, in turn, be thereby promoted.

Pretermitting review of the other charges, the conclusion is that charge A was sustained by the evidence; and that, in consequence, the court below did not err in removing appellant as a practicing attorney in this state. The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and DE GRAFFENRIED, JJ., concur.

### ON REHEARING.

McCLELLAN, J.—It is thought desirable that repetition, in this response to the application for rehearing, of matters of consideration set down in the opinion ante, should be avoided as far as practicable.

With the view to indicating the inapplication of the class of decisions of which *Burgess v. Martin,* 111 Ala. 656. 20 South. 506, is one, a distinction is noted in the foregoing opinion, as upon the patently apt authority

afforded by the quoted language of Chief Justice Brickell in *Jacobs v. State,* 61 Ala. page 452, between affidavits that possessed an evidential function and affidavits the sole office of which is, to quote the Chief Justice, "purely cautionary—a pledge of good faith in the commencement of the suit." The purpose of this cautionary verification is, to further quote the Chief Justice, "to prevent an abuse of the extraordinary power to disturb and displace the possession of the defendant" before hearing or judgment. It is now insisted in brief, that the last-quoted language negatives the idea on which we laid the differentiation of *Burgess v. Martin,* 111 Ala. 656, 20 South. 506, and others of that class. The language last quoted, itself, demonstrates the unsoundness of the contention now made. Obviously the Chief Justice intended to point out the object to be subserved in the requirement of the precaution, viz., to prevent abuse of the extraordinary power; and not with the object of affording evidence upon which to invite judicial action—evidence to establish a right to judicial action as was the case in the decisions of the class indicated in the opinion on original submission. It is now further contended that the distinction noted as indicated above cannot be soundly taken in view of these decisions: *McKissack v. Voorhees,* 119 Ala. 101, 24 South. 523; *Smothers v. Meridian Fertilizer Co.,* 137 Ala. 166, 33 South. 898. The quotation to be made from the opinion (page 171 of 137 Ala., page 900 of 33 South.) in the *Smothers case, supra,* demonstrates that the subject of the attempted verification, viz., the petition, was then being viewed as evidence vel non of the facts alleged in it. The court said: "For there was no proof of the truth of the controverted facts alleged in the petition. It is true, it

purports to be verified. But the verification amounts to no verification at all."

The case of *McKissack v. Voorhees, supra,* was a bill filed under section 819 of the Code of 1896, for the discovery of assets. By virtue of the provisions of section 821 of the Code of 1896, a receiver was, under therein defined circumstances, authorized to be appointed. The report of *McKissack v. Voorhees* does not contain a recital of the full purposes of the bill; so the original record has been consulted. It appears that the bill also sought the appointment of a receiver. Hence the Smothers and McKissack Cases do not in statement or ruling conclude in denial of the distinction taken in the opinion delivered as upon original submission of this appeal. So *Burgess v. Martin,* and others of that class, are not authority for the conclusion appellant presses viz., that the statute (section 2992) under consideration does exact verification by a person who has knowledge of the facts.

The New York Court of Appeals, in *Pratt v. Stevens,* cited in the foregoing opinion, interpreting the statute there under review, received with favor and made effective in the attainment of the conclusion there prevailing, the consideration, set forth in the opinion ante, that to exact a verification of an affiant who has personal, positive knowledge of the facts undertaken to be verified, would impress the enactment with a construction that would embarrass, if not impair, the operation of the statute. There the statute provided that the debtor's affidavit should be that the inventory is "in all respects just and true." It was expressly ruled that the affidavit was not required to be absolute and unqualified.

In *Mitchell v. Pitts,* 61 Ala. 219, this court, while dealing with the question of the insufficiency of an

[Worthen v. The State, ex rel. Verner, et al.]

affidavit in an attachment proceeding—an affidavit much like that here under review, and made in virtue of a statute containing just as positive provisions in respect to the oath as section 2997 here involved— thought it not improper to take account of the impracticability of administration if the statute was construed as requiring an affirmation based upon absolute knowledge. This court then possessed an exceptionally able membership; and in response to rehearing declared that the court had no doubt of the correctness of its conclusion as originally expressed. The practical effect that a proposed interpretation or construction of a statute will have is always one of the chief considerations in ascertaining a dubious legislative intention.—36 Cyc. pp. 1111, 1112. Upon reconsideration of the sufficiency vel non of the affidavit in these proceedings, our conclusion remains as before. The affidavit was not defective. It was sufficient.

The statute, section 6312, which appellant violated, has been also re-reviewed. No doubt of the correctness of the original construction of it, as set forth in the foregoing opinion, is entertained. Its language is simple and its intent clear. When an attorney does what the statute inhibits, the penalty, disbarring him, is due to be visited upon him.

The conclusion, as upon and from the undisputed facts and circumstances set forth in the quotation from the bill, has been again gone over. Our opinion still is that those facts and circumstances entirely supported and justified the judgment of the trial court; and hence that no error in that respect underlies the adjudication of removal of the attorney in consequence of charge A.

The application for rehearing is denied.