(135 So. 841)

### LOUISIANA STATE LIFE INS. CO. v. PHILLIPS.

6 Div. 792.

Supreme Court of Alabama.
Jan. 15, 1931.

Rehearing Denied March 19, 1931.

Arthur F. Fite, of Jasper, for appellant.

Bankhead & Bankhead, of Jasper, for appellee.

ANDERSON, C. J.

■ The bill as amended seeks in the alternative to meet section 8364 of the Code of 1923 by charging that the false misrepresentations were made with the actual intent to deceive or that the matter misrepresented increased the risk of loss. It is not questioned that the policy contains a provision of invalidity in case of said misrepresentations, and the appellant contends that the misrepresentations appear in the application and which was attached to or made a part of the policy contract as required by section 8371 of the Code of 1923. It appears that the application was in three parts, the first two parts being interrogatories to the applicant to be answered and signed by him, while the third part was a mere certificate to be filled out and signed by the examining physician and with which the applicant had nothing to do and with which he was not concerned, and which said third part could not form the basis of invalidity as it was not made a part of the policy contract as were parts one and two which were made so by photographic copies.

It seems that the complainant relies upon a misrepresentation in answering questions 17, 20, and 21 to part second of the application. It is sufficient to say that question 20 relates to matter contained in part 3 which has not been set out and made a part of the policy contract as required by section 8371 of the Code. Therefore the complainant must rest its right to relief upon false answers as to questions 17 and 21 and which are conceded to be inaccurate.

We think the evidence relieves the respondent of having made the misrepresentations with the actual intent to deceive as the uncontradicted testimony of Dr. Terry, the examining physician, shows that he himself filled out the answers without asking respondent the questions and that, while respondent signed the application, he did not. read the same or have it read. Indeed, counsel for appellant does not seriously rely upon this theory of the case. It would seem, however, that notwithstanding this, he signed the application and received and kept the policy containing these questions and answers and that would amount to a warranty on his part of the truth of same.

It has been held by this court that every false warranty will not vitiate a policy contract; it must be as to some fact that would materially increase the risk. Mutual Life Ins. Co. v. Allen, 174 Ala. 511, 56 So. 568; Metropolitan Life Ins. Co. v. Goodman, 196 Ala. 306, 71 So. 409; Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649; Empire Life Ins. Co. v. Gee, 171 Ala. 441, 55 So. 166; Accident Insurance Department, etc., v. Brooks, 216 Ala. 607, 114 So. 6; National Life & Accident Ins. Co. v. Albert, 219 Ala. 190, 121 So. 708.

■ The complainant contends that the answers to questions 17 and 21 were false and that a true answer would have disclosed facts or matter that would have materially increased the risk; that, as a matter of fact, he had within two years previous been in a hospital and was suffering from and treated for syphilis, a disease that materially increased the risk. It may be conceded that he had syphilis when he went to the Birmingham General Hospital in 1926, though Dr. Payne said he was treated for chancroid, a different disease from syphilis, and which was local and not at all dangerous. The witness, however, would not swear that he did not have and was not treated by Dr. Gewin for syphilis. There is also much evidence, though hearsay and secondary in character, which strongly indicates that he had syphilis at that time, notwithstanding Dr. Payne may have thought he had a chancroid and treated him for that trouble. While this evidence was not primary or the best, it was let in without objection and, being competent, must be considered by this court and does not fall within the rule of exclusion by section 6565, new to the Code of 1923. Hill v. Hill, 216 Ala. 435, 113 So. 306.

■ Conceding that the respondent had syphilis when treated at the hospital in 1926, has the complainant shown that it was a disease of such character and had so far progressed as to materially increase the risk? This court does not judicially know that syphilis increases the risk of loss. Metropolitan Life Ins. Co. v. Goodman, 10 Ala. App. 461, 65 So. 449. We must therefore abide by the views and testimony of the medical men, and it seems, from the weight of the evidence, that syphilis is not an incurable disease and does not necessarily shorten life if taken in hand in time. True, Dr. Ward stated on direct examination that syphilis would increase the hazard of death or physical infirmity, but, upon cross-examination, admitted that it was a curable disease and that a large percentage were cured. He also stated that while some of the medical authorities held to the view that the disease could not be eradicated from the system, they were very far in the minority. Now there is no question that this young man had syphilis a few months after the policy was issued and when taken to a hospital the second time and still had it when the evidence was given, and the complainant's theory is that it was but an outcrop of the first attack and not a new case and, in fact, the disease was deep-seated and stubborn and had not been cured when the application for insurance was made. This theory may seem logical to the lay or legal mind, but we must be guided by the evidence in the case and which tends to show that the first attack was cured and that the second was a new one and contracted after the issuance of the policy. He was pronounced cured and sound when discharged from the hospital in 1926 and had every appearance of excellent health until a few months after the issuance of the policy, was examined by Dr. Terry when the insurance was taken out, and was found physically sound. Dr. Terry also testified that when he examined the respondent a few months after the issuance of the policy he found he had syphilis, but which indicated a fresh or new case of recent contraction. Dr. Terry was not only not contradicted, but is, in a sense, sustained by Dr. Ward who stated that one of the reasons for not puncturing the spine, when the young man was brought to the hospital in 1928, was that it was "too recent."

The decree of the circuit court is affirmed. Affirmed.

SAYRE, THOMAS, and BROWN, JJ., concur.

On Rehearing.

ANDERSON, C. J.

■ The opinion is attacked because of the statement that Dr. Terry's testimony was uncontradicted as to his not asking the insured the questions 17, 20, and 21, and it is asserted in brief, "Dr. Terry was contradicted by himself in the evidence he gave in this case." True, Dr. Terry testified twice, first as the appellant's witness and later as a witness for the appellee, and we find no conflict as to this question. He testified positively on second examination that these questions were not read over to the insured and were answered by him from his own information. On the first examination he stated that he filled out some of the blanks on information obtained by a physical examination; that is, his answer to this question was: "Yes, sir; now part 2 of my physical examination." He was asked later on: "And part 2 is what you filled out on information furnished by him? The page that's marked part 1 is not in your handwriting?" "No, sir, that's the agent's." We find nowhere a statement or admission in the testimony of this witness that he asked the insured the questions involved, but find an express denial that he did. True, the witness signed the certificate to the examination which states, "that the statement of the applicant on the other side of this sheet is in my handwriting, and is exactly as made by the applicant to me." This would seem inconsistent and afford a contradictory inference and the statement in the foregoing opinion that the testimony of Dr. Terry on this point was uncontradicted was inaccurate. Yet we do not feel justified in holding that this contrary inference should overcome or destroy the positive testimony of this witness as to just what did occur upon the examination of the insured.

■ We are still of the opinion that question 20 cannot be considered in passing on the

validity of the policy as a warranty. It refers to the diseases set out in item 4 of part 3 of the application and examination, and said part 3 was not attached to or made a part of the policy as required by section 8371 of the Code. Nor can the insured be charged therewith by the acceptance and retention of the policy, which had question 20 attached, for the reason that the question does not indicate what disease is referred to without reference to item 4 of part 3 and which was not attached or made a part of the policy. Moreover, the defendant got the benefit of this in the other two questions discussed that he had syphilis, and it would defeat the policy if it materially increased the risk, but the weight of the evidence showed that he had been cured when the application was made.

■ We are taken to task for holding that the evidence showed that the insured was cured and are criticized for referring to the statement of Dr. Ward. As to its being regarded by Dr. Ward as a recent case, this statement was direct and has no element of hearsay. True, the statement to the father that he was cured or fit to go home was hearsay, but was not objected to and was relevant, though not the best evidence, and should not be excluded by this court under section 6565 of the Code of 1923. Hill v. Hill, 216 Ala. 435, 113 So. 306; Cotton v. Cotton, 213 Ala. 336, 104 So. 650. Indeed, if this section was applicable to hearsay or secondary evidence to relevant and material evidence, it would have to be applied to the register of the blood test showing that the insured had syphilis when he went to the hospital the first time, and with this evidence excluded the testimony of Dr. Payne that his disease was chancroid and not syphilis would be conclusive. Moreover, the statement by Dr. Ward was by no means the only evidence that the insured had been cured as Dr. Terry found him sound when he subsequently examined him, and then afterwards discovered that the second case was new or fresh.

It may be that we did not consider the contention of counsel as to the fraudulent feature of the case as serious as counsel intended it to be, as we felt that the warranty feature was the more serious and meritorious; but we did consider and discuss the case from both angles, and we beg counsel's pardon for the expression that this point was not seriously insisted upon.

■ It is urged that we have ignored the case of Mutual Life Ins. Co. v. Allen, 166 Ala. 159, 51 So. 877, which construed section 8371 of the present Code, section 4579 of the Code of 1907, as not requiring false representations as distinguished from warranties to be attached to or made a part of the policy. We did not intend to hold to the contrary for the reason that the insured did not answer the questions 17, 20, and 21 and was not therefore guilty of a false representation, and this being the case, he was only liable as for a warranty as for an acceptance of the policy which contained and presented questions 17 and 21 and the answers thereto, but was not bound by question 20 as a warranty for the reason that the same related to matter not contained in or presented by the policy. We did not hold or intend to hold that if it appeared that the insured falsely and fraudulently answered said questions he would not be bound thereby as for a false representation unless the same was made a part of the policy. We simply hold that he was not guilty of false representations in this respect because he did not make the answers thereto, but he was bound by 17 and 21 as warranties because they had been made a part of the policy and he accepted and retained the same.

■ Counsel for the appellant also insists that the insured accepted and retained the policy and, as questions 17 and 21 and the answers thereto were a part thereof, that he not only became bound thereby as warranties as held by the court, but as false statements, and that the policy was vitiated whether the said false statements did or did not increase the risk of loss, and our attention is called to certain cases on the subject, especially the case New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934. We have no war to make on this case and would hold just as that court did, that the policy was forfeited as for a breach of warranty, but for our statute which requires that the risk of loss must have thereby been increased, but we cannot agree that the mere acceptance and retention of the policy, in the absence of some proof that he read the same, or was aware of the false statements made by the examining physicians, would render him guilty of having made misrepresentations with the actual intent to deceive. A presumption may be indulged that he read the policy to the extent of binding him thereby as for a warranty of the statements in the application thereto attached, but a mere presumption that he did read it should not suffice to convict him of making misrepresentations with the actual intent to deceive. In order for him to be chargeable with representations as with the "actual intent to deceive," he must have had actual as distinguished from constructive notice.

The application for rehearing is overruled.

SAYRE, THOMAS, and BROWN, JJ., concur.