(135 So. 477)
PACIFIC MUT. LIFE INS. CO. v. STRANGE.

6 Div. 813.

Supreme Court of Alabama.

May 21, 1931.

Rehearing Granted June 18, 1931.

London, Yancey & Brower and Jim C. Smith, all of Birmingham, for appellant.

Harsh & Harsh, of Birmingham, for appellee.

FOSTER, J.

The bill in this case was filed by an insurer to rescind and cancel for fraud a health certificate of insurance against total permanent disability. The policy was dated November 25, 1929. The bill was filed May 20, 1930, and averred the payment of only the initial annual premium, the amount of which, with interest, was paid into court upon the filing of the bill. The policy is alleged to contain a clause by which "it was non-cancellable for a period of to-wit nineteen years from date of issuance thereof except for the non-payment of premiums." The bill alleges fraudulent misrepresentations with the actual intent to deceive, in relation to matter which increased the risk of loss.

An insurer as a general rule may file suit in equity to cancel a policy of insurance for fraud in procuring its issuance, if promptly done and customary terms and conditions are met, and no suit is pending at law in which the defense is available. 32 Corpus Juris 1268; 5 Cooley's Briefs on Ins. 4721, et seq.

In respect to contracts generally, it is also said that this is true, notwithstanding any provision in it to the contrary. For, if the contract was procured by fraud, there is nothing in it of a binding nature. Fay & Egan Co. v. Independent Lumber Co., 178 Ala. 166, 59 So. 470; Alabama Mach. & Supply Co. v. Caffey, 213 Ala. 260, 104 So. 509; Brenard Mfg. Co. v. Pearson, 213 Ala. 675, 106 So. 171.

But as applied to the incontestable clause of an insurance policy, alleged to have been procured by fraud, there has been some apparent modification of this rule by the authorities. In such cases they generally hold that if the clause makes the policy incontestable for any cause (except nonpayment of premiums) for a definite period, which is not unreasonably short, it is not against public policy, and is sometimes treated as constituting a short statute of limitations in favor of insured. The purpose of this is to fix a limited time in which the insurer must ascertain the truth of the representations made, and is thereafter bound by the contract, notwithstanding the undiscovered fraud. 5 Cooley's Briefs on Ins. p. 4483; 37 Corpus Juris 544; 6 A. L. R. 453 et seq.; 13 A. L. R. 675; 35 A. L. R. 1492. Many cases are cited in the notes, not necessary here to repeat and there seems to be no conflict on this point. This is also the rule in the federal courts. New York L. Ins. Co. v. McCarthy (C. C. A.) 22 F.(2d) 241; Jefferson Standard Life Ins. Co. v. McIntyre (C. C. A.) 294 F. 886 (one case was before Walker, Bryan and Foster, and one case was before Judges Walker, Bryan and Grubb).

But when the incontestable clause is recited to be operative from the date of the issuance of the policy, there is a sharp conflict of authority on the subject of its effect in preventing a claim by the insurer that the contract was procured by fraud. The arguments are substantially as follows. Those upholding the contract against such attack call attention to the fact that the clause was written by the insurer in its own terms, by which the public are induced to enter into such contracts upon the assurance that, after the insurer has accepted the risk, the validity of the contract is fixed; that the insurer has an unlimited time before the risk is accepted in which to investigate the facts, and it can do so before as well as after the policy is issued, and is based upon information provided in the answers of the applicant. The insurer in such a policy should, and doubtless does, anticipate deceit and sets to work through its own processes by exhaustive and ex parte methods to discover it. When this has been concluded, and it is satisfied, and announces its satisfaction and willingness to bind itself to that effect, no subsequently discovered fraud, nor any other circumstance should avoid the policy, except nonpayment of premiums. The cases taking this view: McKendree v. So. States L. Ins. Co., 112 S. C. 335, 99 S. E. 806; Duvall v. National L. Ins. Co. of Montana, 28 Idaho, 356, 154 P. 632, L. R. A. 1917E, 333, Ann. Cas. 1917E, 1112; Union Cent. Life Ins. Co. v. Fox, 106 Tenn. 347, 61 S. W. 62, 82 Am. St. Rep. 885; Patterson v. Natural Premium Mut. L. Ins. Co., 100 Wis. 118, 75 N. W. 980, 42 L. R. A. 253, 69 Am. St. Rep. 899; 6 A. L. R. 454; 37 C. J. 544.

The cases to the contrary proceed upon the theory that a contract procured by fraud is not a contract in any of its terms, and that the law implies that the insurer intended to reserve to himself the right to show that on that ground the contract is void, and that public policy will not permit one to secure the benefits of a contract which he procured by misrepresentations of a material nature, with the actual intent to deceive, for every feature and clause of the contract is by such method set at naught. The cases are Massachusetts Benefit Life Ass'n v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; New York Life Ins. Co. v. Hardison, 199 Mass. 190, 85 N. E. 410, 127 Am. St. Rep. 478; Reagan v. Union Mut. Life Ins. Co., 189 Mass. 555, 76 N. E.

217, 2 L. R. A. (N. S.) 821, 109 Am. St. Rep. 659, 4 Ann. Cas. 362; Welch v. Union Cent. Life Ins. Co., 108 Iowa, 224, 78 N. W. 853, 50 L. R. A. 774; New York Life Ins. Co. v. Manning, 156 App. Div. 818, 124 N. Y. S. 775, 142 N. Y. S. 1132; New York Life Ins. Co. v. Weaver, 114 Ky. 295, 70 S. W. 628; 6 A. L. R. 455, 456; 37 C. J. 544.

The theory of such cases is the same as that which we have applied to contracts generally, as we heretofore mentioned. But in such cases there was no proposal on the part of one of the parties to investigate to his satisfaction the subject about which the fraud related, and at the end of such investigation to make a solemn contract not to avoid it. If one can contract to be bound after a year, or two years, why not after such unlimited years as he wishes before entering into the contract? If the insurer wishes a year before making the contract, it takes that much time. All the authorities seem to agree that the insurer may bind itself by fixing a reasonable, definite time after the issuance of the policy, usually one or two years, though it develops that there was fraud in procuring it, which was not discovered in the stipulated period. Such a provision, we think, is subject to the same comments applicable when it is incontestable from the date of issuance; viz., that it should be avoided as other features of a contract procured by fraud, and should have no more force or effect; that the insured is profiting by his own misconduct by which the insurer is defrauded, and of which it had no notice within the stipulated period. Yet the insurer cannot set up the fraud after such period.

We think the same reasons which uphold such a contract, though fraudulently procured, should do so when the insurer has allowed itself all the time it desires to ascertain the facts before making the contract, by which it expressly agrees and undertakes to bind itself against the right of revocation for any cause. We prefer to put ourselves in line with such view and hold the incontestable clause binding on the insurer against fraud, whether incontestable from issuance, or from some date thereafter, when fraud is not excepted in its terms.

The decree of the circuit court expressed this view, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

FOSTER, J.

It has been pointed out in several cases that the term sometimes employed in connection with an incontestable clause, that it is a short statute of limitations, is not intended in the sense in which such a statute fixes the time after which a suit is barred. But as said in one case, the sole question in respect to such a clause is, "Does the stipulation of the policy in question preclude appellant from making the defense set up in the answer? * * * It is incontestability of the policy, and not the limitation, that bars the defense. The parties * * * did not substitute a shorter period of limitation for that provided by the statute. The stipulation has no reference to limitation, but to a waiver by the insurer of the right of defense on the ground of fraud that may have been practiced by the insured in obtaining the policy, in consideration of the latter's making payment of premiums as required by the policy; the time for the policy to become incontestable being fixed * * * to give the insurer time to satisfy itself that no fraud was committed by the insured." Citizens' Life Ins. Co. v. McClure, 138 Ky. 147, 127 S. W. 749, 27 L. R. A. (N. S.) 1026, quoted in Metropolitan Life Ins. Co. v. Peeler, 71 Okl. 238, 176 P. 939, 943, 6 A. L. R. 441, 447, 448.

Other cases hold that an incontestable clause after a certain date is not of the character of a limitation by agreement upon the time in which a suit may be begun contrary to statute prohibiting agreements shortening the statute of limitations. Priest v. Kansas City Life Ins. Co., 119 Kan. 23, 237 P. 938, 941, 41 A. L. R. 1100; Humpston v. State Mut. Life Assur. Co., 148 Tenn. 439, 256 S. W. 438, 445, 31 A. L. R. 78. Quoting from Priest v. Kansas City Life Ins. Co., supra, "It is competent for the insurance company to agree that its liability on the policy shall be absolute from the beginning, notwithstanding any intentionally false statements that may have been made in the application. An agreement that the policy shall be incontestable after a certain time is substantially the same thing, with a condition or qualification incorporated allowing time for fuller investigation and inquiry."

Our cases treat such a clause as "not an assurance against crime but an assurance against the hazard of litigation." United Order of G. Cross v. Overton, 203 Ala. 335, 83 So. 59, 13 A. L. R. 672; Supreme Lodge, etc., v. Overton, 203 Ala. 193, 82 So. 443, 16 A. L. R. 649; Mutual Life Ins. Co. v. Lovejoy, 201 Ala. 337, 87 So. 299, L. R. A. 1918D, 860; Independent Life Ins. Co. v. Carroll, 222 Ala. 34, 130 So. 402.

We cannot agree with the contention that an incontestable clause, such as we are considering, violates section 8951, Code, which prohibits an agreement to shorten the statute of limitations.

Our attention is called to paragraph four of the bill, which alleges that the application for insurance was attached to, and made a part of, the policy, and contained the statement and agreement that if the answers to inquiries set out in it were false, with the intent to deceive and materially affect the risk, it

would bar the right to recover under the contract of insurance.

The original bill and the amendment allege that a copy of the policy is attached, but this is not in fact done, nor does it otherwise appear. The amendment alleges that the policy contains a clause which is copied in the original opinion. It therefore appears that there is confusion or inconsistency in the allegation as to whether the policy reserves the right to contest or cancel for fraud. The original bill alleges that the policy contains a clause whereby it is incontestable and noncancellable after a year from date of issuance, except for nonpayment of premiums. The amendment strikes out that allegation and avers that the policy makes it noncancellable from date of issuance, etc.

■■ We must construe the bill most strongly against the complainant on demurrer. So construed, and without an allegation that the noncancellable clause is modified by the terms of the application, or otherwise, so as to reserve fraud as a cause for cancellation, we think that we correctly construed the policy as pleaded in the bill. But on account of the apparent confusion and the absence of a copy of the policy as a part of the bill, which might clear this confusion, our judgment now is that complainant should not be entirely cut off from presenting its case in its true aspect; that is, to plead the contract of insurance in its entire effect, including the application, if it is a part of the contract, so as to make clear its terms. For that purpose we think that feature of the decree of the circuit court which dismisses the bill should be reversed, but affirmed to the extent that the demurrers were sustained for the reasons assigned in our opinion.

The application for rehearing is therefore granted, and the decree of the circuit court is ,affirmed to the extent that the demurrers were sustained, and reversed to the extent that the bill was dismissed, and remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.