20 So.2d 207

**VREDENBURGH v. LIBERTY NAT. LIFE INS. CO.**

1 Div. 229.

Supreme Court of Alabama.

Dec. 21, 1944.

E. W. Pettus, of Selma, and C. L. Hybart, of Monroeville, for appellant.

H. H. Grooms and Spain, Davies, Gillon, Grooms & Young, all of Birmingham, for appellee.

STAKELY, Justice.

This is an appeal from a decree of the equity court overruling demurrers to the original bill of complaint. Liberty National Life Insurance Company (appellee) filed its bill of complaint against Peter Vredenburgh, III (appellant), in the circuit court of Monroe County, in Equity, seeking a declaration of the invalidity, or in the alternative the cancellation, of two certain life insurance policies in the amount of $10,000 and $50,000, respectively, and numbered respectively 315164 and 315595. The policies are on the life of appellant and are payable to Dorothy McElroy Vredenburgh, his wife, as beneficiary. With respect to these two policies, the allegations of the bill show the following case.

On September 20, 1942, appellant made written application to appellee for a policy of insurance in the amount of $10,000. This application is made a part of the bill of complaint as Exhibit A. It is designated as part 1 of the application. On November 3, 1942, appellant executed and forwarded to appellee part 2 of the application, which is made a part of the bill as Exhibit B. The policy, with parts 1 and 2 of the application attached thereto, was issued on November 11, 1942, and delivered to E. F. Arnold, as agent of the appellant, who accepted it in behalf of appellant and made payment of the first premium thereon in the sum of $304.30 on, to-wit, November 15, 1942.

On November 21, 1942, appellant made written application for additional insurance with appellee in the amount of $50,000 and executed part 1 of the application,

which is made a part of the bill as Exhibit C. On the assumption that there had been no change in the state of appellant's health since part 2 of the application for the $10,000 policy was executed on November 3, 1942, a copy of part 2 of the application for the $10,000 policy, together with part 1 of the application for the policy for $50,000, was attached to the policy for $50 000 and the policy for $50,000 so constituted, was executed by appellee and issued by appellee and delivered on November 29, 1942, to said Arnold, as agent for appellant. Accompanying the application, which was received by the appellee on November 23, 1942, was a check in payment of the first premium on the policy in the amount of $1521.50. Copies of the two policies are attached to the bill as Exhibits (1) and (2), respectively. Exhibit (2), which is a copy of the $50,000 policy, shows that part 2 of the application is the same with reference to both policies. Part 2 of the application is designated as "Answers made to the Medical Examiner" and makes no reference to the amount of insurance applied for. Part 2 of the application was signed by appellant and contains the following paragraph: "On behalf of myself and of each person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me and that each of them is full, complete and true and to the best of my knowledge & belief and agree that the Company believing them to be true shall rely and act upon them."

Further allegations of the bill appear in paragraphs 5, 6, 7, 8 and 9. These paragraphs will be set out in the report of the case. The bill further alleges that the representations set out in paragraphs 7, 8 and 9 were false and were relied on by the company in issuing each of the policies; that said misrepresentations were made with actual intent to deceive; that said misrepresentations related to matters which increased the risk of loss; that in each policy it is provided that the policy shall be incontestable after two years from the date of issue, except for non-payment of premiums; that the incontestability provision will become effective upon the expiration of the time therein provided and that complainant will then be barred of the relief prayed for herein unless complainant is granted the relief herein prayed for; that unless complainant is granted

said relief it will suffer irreparable damage in the premises.

Further allegations of the bill show that on, to-wit, December 7, 1942, appellee tendered the appellant the premiums received from him with interest thereon and offered to rescind the policies; that appellant refused to accept the return of the premiums and to accept rescission of the said policies; that the complainant tenders into the registry of the court the amounts received as premiums on the policies, together with legal interest.

The bill further alleges that the policies are void and without force and effect and should be so declared; that the respondent asserts that said policies are valid and in full force and effect; that there is an actual controversy of a justiciable matter existing between complainant and respondent as to the validity of said policies and that the court should declare said policies and each of them null and void or in the alternative, cancel the policies as without force and effect, and that complainant does not have a complete, full and adequate remedy at law; and further that the complainant offers to do equity in the premises.

Each of the two policies here involved contains a two-year incontestable clause, as follows: "8. Incontestability—This Policy shall be incontestable after two years from its date of issue, except for non-payment of premium and except as to provisions and conditions relating to Disability, Double or Special Indemnity Benefits, if any, and except as to death occurring under any of the conditions specified in the 'War Risk and Aviation Exclusion Provision' of this Policy, if such provision be included in this Policy."

■ The appellee cannot afford to await a contest under the policies. American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605, 111 A.L.R. 1268. By so doing, if the contestable period runs out, it would lose its right to contest. The incontestable clause, under the allegation of the bill, entitles the appellee to relief under the bill, provided a case for cancellation or judicial ascertainment of invalidity is otherwise made out. Pacific Mut. Life Ins. Co. v. Strange, 223 Ala. 226, 135 So. 477. See also American Life Ins. Co. v. Stewart, supra; New York Life Ins. Co. v. Seymour, 6 Cir., 45 F.2d 47, 73 A.L.R. 1529. In fact this phase of the case does not appear to be questioned by appellant.

What, then, are the contentions of appellant? They may be summarized as (1) it does not appear that respondent was aware of the fact that he was suffering from a heart disease; (2) it does not appear that respondent was aware that he was being treated by a physician for heart disease; (3) it does not appear that any representations were made by respondent as to his health or condition with reference to the policy for $50,000; (4) the policy for $50,000 was issued without medical examination or without requiring an application.

The bill seeks relief on the basis of three phases and will be treated accordingly. They are (1) alleged breach of warranty; (2) misrepresentations of matters material to the risk alleged to be false and made with actual intent to deceive; and (3) misrepresentations of matters alleged to be false and which increased the risk of loss.

According to the bill, part 1 of the application, attached to each policy, contains a provision that the insurance shall not take effect until a full first premium is paid "and the policy delivered to me during my life and good health, (and then only if I have not consulted or been treated by any physician since my medical examination submitted with this application)." The bill alleges in substance that respondent was not in good health when each of the policies were delivered, being ill with a serious ailment of the heart, and further that between the date of part 2 of each of the applications and the date of delivery of the policies, respondent had consulted with or been treated by a physician for such heart ailment, which facts were unknown to complainant and that the foregoing materially increased the risk of loss. Taken with the allegations of incontestability, these allegations present a basis for relief. Stipulations of this character are warranties within the meaning of § 6, Title 28, Code of 1940.

In Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 404, 137 So. 16, 18, this court, referring to the policy stipulation as to sound health at the time of delivery of the policy, used the following language:

"The policy stipulated: 'That no obligation is assumed by the company prior to the date and delivery of the policy, nor unless on said date the insured is alive and in sound health.' Another clause declared that in such event the policy should be void. The application contained a like stipulation.

* * * * * * *

"Stipulations of this character are warranties within the meaning of the Code, § 8364, and to avoid the policy the unsound health must be such as to increase the risk of loss.

* * * * * * *

"The stipulation that the insured must be in sound health, not suffering from a fatal sickness which renders him or her uninsurable, may be regarded as of the essence of life insurance."

In Bankers' Credit Life Ins. Co. v. Ayres, 223 Ala. 407, 408, 137 So. 23, 24, this court said:

"Passing over any question of fraud or collusion between the beneficiary and agent in seeking to put in force a policy under such circumstances, we must hold that an agent empowered to collect premiums and deliver policies is without power to waive the condition as to sound health, in the face of contractual stipulations to the contrary."

There can be no doubt that heart trouble may be a serious disease. Sovereign Camp, W. O. W., v. Harris, 228 Ala. 417, 153 So. 870; Mutual Life Ins. Co. of New York v. Allen, 174 Ala. 511, 56 So. 568. It is also true that failure to divulge consultation with or treatment by a doctor for heart ailment could increase the risk of loss. New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277; Metropolitan Life Ins. Co. v. Dixon, 226 Ala. 603, 148 So. 121; First National Life Ins. Co. v. Rector, 225 Ala. 116, 142 So. 392.

Phase 1 of the bill (breach of warranty) is not subject to demurrer. It is good as to both policies of insurance.

It is earnestly argued that appellant cannot be charged with false statement and actual intent to deceive when he answered questions 9 B, 10 B and 12 in part 2 of the application, because the application shows on its face that the questions were answered by appellant "to the best of my knowledge and belief." It is urged that when the answers were made "to the best of my knowledge and belief," this shows that appellant was not aware that he had a serious ailment of the heart or had consulted a physician for heart trouble. It is true that in order to charge appellant with actual intent to deceive, he must have actual as distinguished from

constructive notice, that is, he must be conscious that his answers were false. Louisiana State Life Ins. Co. v. Phillips, 223 Ala. 5, 135 So. 841; Massachusetts Mut. Life Ins. Co. v. Crenshaw, 195 Ala. 263, 70 So. 768.

But the bill charges that the representations contained in the answers were false and made with actual intent to deceive. Now do the words "to the best of my knowledge and belief," contained in the exhibit attached to the bill, neutralize or minimize the complainant's averment of falsity and actual intent to deceive. We do not think so, because these words are but respondent's version of the truth and not necessarily the truth itself. To put it another way, when the case is heard on the merits, then the use of these words in the application along with the other facts and circumstances in the case, will be weighed by the court to determine whether appellant was conscious that he had a serious condition of his heart or had consulted a doctor for heart trouble, when he made the answers in part 2 of the application. "The answers to the questions were declared and warranted to be 'complete, correct and true to the best of my knowledge and belief,' to use the language of the application. Under the tendencies of the evidence above outlined, therefore, it was open to the jury to find that insured had answered the questions honestly and in good faith and truthfully as well." American Nat. Ins. Co. v. Walstrom, 226 Ala. 402, 404, 147 So. 595, 596.

In Worthen v. State ex rel. Verner et al., 189 Ala. 395, 66 So. 686, 688, the statute required an affidavit for the commencement of disbarment proceedings to be based upon "facts" verified as being "true." The affidavit actually filed was based upon the truth "to the best of his knowledge, information and belief." The court held the affidavit sufficient and in the course of its opinion said:

" 'The general rule is that an oath taken before a competent officer merely verifies the truth of the facts stated, according to the best knowledge, information, and belief of the affiant.' Pratt v. Stevens, 94 N.Y. 387, 392.

"Perjury may be predicated of an affidavit bearing the oath of truth according to the best of affiant's knowledge, information, and belief. Pratt v. Stevens, supra."

This case has recently been reviewed in Mitchell v. McGuire, 244 Ala. 73, 12 So.2d 180, 183. In the Mitchell case, the probate judge was sued for issuing a license to a minor. The Code required an affidavit by a credible person "claiming to know the fact." Code 1940, Tit. 34, § 16. The affidavit was made on information and belief. The trial court excluded the affidavit. This court in reversing the trial court, said:

"We wish further to indicate that the case of Worthen v. State ex rel. Verner et al., 189 Ala. 395, 66 So. 686, supra, is directly in point. It holds that a similar affidavit was sufficient to institute proceedings for disbarment of an attorney at law, and further that such an affidavit would be the foundation for prosecution for perjury. This is the test of the sufficiency of an affidavit."

Under the foregoing authorities, if the words "to the best of my knowledge and belief" had been used in an affidavit, a charge of perjury would be sustained. If this be true, then these words will not detract, so far as pleading is concerned, from the allegations, as set forth in the bill, "that the representations set out and averred in Paragraphs 7, 8 and 9 hereof were false * * * and made with actual intent to deceive."

Next it is contended by appellant that the company did not require a medical examination of the insured as a condition precedent to the issuance of the policy for $50,000. It is further insisted that the company attempted to substitute part 2 of the application for the $10,000 policy in lieu of part 2 of an application for the $50,000 policy, and that since the appellant never made such application and certainly because, if made, it was not attached to the policy, as required by § 75, Title 28, Code of 1940, a defense based on part 2 of the application will not be allowed so far as the $50,000 policy is concerned.

§ 75, Title 28, Code of 1940, has no bearing on this case. There is no attempt on the part of appellee to base a defense on a writing not attached to the policy. A copy of part 2 of the application for the $10,000 policy, which was signed by appellant, was attached to the policy for $50,000. The pertinent question is whether under such circumstances answers made in part 2 of the application can be made the basis of defense to the policy for $50,000. We do not think they can be so used under

phase 2 of the bill, but can be so used under phase 3 of the bill.

 There is no allegation that appellant read this policy. Construing the pleadings against the pleader, it does not appear that appellant was aware that it had been issued by the company on the basis of the answers contained in part 2 of the application. According to the pleadings the only knowledge on the part of appellant of the contents of the policy must arise from presumption. It is true that such presumption will be indulged since he received and kept the policy. Georgia Home Ins. Co. v. Warten, 113 Ala. 479, 22 So. 288, 59 Am. St.Rep. 129. But according to our cases, actual fraud will not be based on this presumption.

"A presumption may be indulged that he read the policy to the extent of binding him thereby as for a warranty of the statements in the application thereto attached, but a mere presumption that he did read it should not suffice to convict him of making misrepresentations with the actual intent to deceive. In order for him to be chargeable with representations as with the 'actual intent to deceive,' he must have had actual as distinguished from constructive notice." Louisiana State Life Ins. Co. v. Phillips, 223 Ala. 5, 135 So. 841, 844.

 Accordingly we conclude that the lower court was in error in overruling the demurrer to this feature of the bill with reference to the policy for $50,000. In order to charge appellant with representations with actual intent to deceive, he must have had actual notice of the contents of the policy for $50,000, or actual notice that this policy had been issued on the basis of part 2 of the application attached thereto.

Phase 2 of the bill (intent to deceive) is good as to the $10,000 policy, but bad as to the $50,000 policy.

 But, under phase 3 of the bill, appellant accepted the policy for $50,000, which had both part 1 and part 2 attached thereto. He has kept the policy and still keeps it, refusing to surrender it.

In Georgia Home Ins. Co. v. Warten, supra [113 Ala. 479, 22 So. 290], this court said:

"The policy was the property of the plaintiff, in her possession; examinable by her before its acceptance, and during the whole period elapsing after its delivery. Knowledge of its terms and stipulations must be imputed * * * to her. The presumption is irrebuttable."

Furthermore, when appellant signed part 1 of the application for the policy for $50,-000, he specifically agreed as follows:

"That this application, together with Part Two hereof, which I agree to complete promptly, and any policy issued in consideration thereof, shall constitute the entire contract between the parties—"

Having made this agreement, then having accepted and retained the $50,000 policy, he certainly cannot be heard to state that he is not bound by part 2 of the application attached to that policy, which was based upon a medical examination less than three weeks before.

 Under phase 3 of the bill it is not necessary that the misrepresentations be made with actual intent to deceive. In fact "the party making the representation may be wholly unaware that he is misrepresenting the true facts, and may be wholly innocent of any bad motive. In such case, intent or motive is not a material inquiry." It is sufficient if the misrepresentations are false and relate to matters which increase the risk of loss. New York Life Ins. Co. v. Horton, supra [235 Ala. 626, 180 So. 281]; All States Life Ins. Co. v. Johnson, 239 Ala. 392, 194 So. 877. The allegations show that the answers were untrue and relate to matters which increase the risk. Authorities, supra.

Phase 3 of the bill (increase of risk of loss) is good as to both policies.

The decree of the lower court is affirmed in part and in part reversed and remanded.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.