(January 12, 1916.)

GERTRUDE DUVALL, Respondent, v. THE NATIONAL INSURANCE COMPANY OF MONTANA, a Corporation, Appellant.

[154 Pac. 632.]

LIFE INSURANCE—STATUTORY CONSTRUCTION—INCONTESTABLE CLAÛSE— VALIDITY OF.

1. Under the provisions of sec. 42, Sess. Laws 1911, p. 732, as amended by Laws of 1913, p. 406, it is provided that an insurance policy, so far as it relates to life or endowment insurance, shall be incontestable after two years from the date of issue, except for nonpayment of premiums and except for violation of the conditions of the policy relating to military or naval service in

time of war, etc. That provision of the statute does not prohibit the parties from contracting that the period of contestability shall be less than two years nor from agreeing that the policy shall not be contestable after its delivery.

[As to contesting policy on ground of fraud, where it contains incontestable provision, see note in Ann. Cas. 1914C, 652.]

2. A clause in a policy of life insurance providing that "This policy is incontestable from its date, except for nonpayment of premiums," precludes any defense after the stipulated period on account of false statements in the application for the policy, even though they were fraudulently made.

3. *Held,* under the facts of this case that the court did not err in sustaining the demurrer to the answer and entering judgment in favor of the plaintiff.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. John M. Flynn, Judge.

Action to recover on a life insurance policy. Judgment for the plaintiff. *Affirmed.*

H. H. Taylor, for Appellant.

Any contract obtained by fraud, whether of life insurance or other kind, is voidable at the option of the defrauded party. (9 Cyc. 411.)

And if, within a reasonable time, he desires to avoid the contract, there is no question of his right to do so. (*Richardson v. Vick,* 125 Tenn. 532, 145 S. W. 174, 176.)

In the case of *Reagan v. Union Mutual Life Ins. Co.,* 189 Mass. 555, 109 Am. St. 659, 76 N. E. 217, 2 L. R. A., N. S., 821, 4 Ann. Cas. 362, a clause identical with the clause before the court was considered; and the supreme court of Massachusetts held that this clause was against public policy and void, and that the plaintiff, the beneficiary of the insured, could not avail herself of its provisions as against the defense of fraud. (*New York Life Ins. Co. v. Hardison,* 199 Mass. 190, 127 Am. St. 478, 85 N. E. 410; *Kansas Mutual Life Ins. Co. v. Whitehead,* 123 Ky. 21, 93 S. W. 609, 13 Ann. Cas. 301; Bliss on Life Ins., 2d ed., sec. 254; *Welch v. Union Central Life Ins. Co.,* 108 Iowa, 224, 78 N. W. 853, 50 L. R. A.

774; *New York Life Ins. Co. v. Weaver's Admr.*, 114 Ky. 295, 70 S. W. 628.) There is an additional reason why this clause is avoided. It is against public policy and the express provisions of sec. 3321, Rev. Codes. (*Huber v. St. Joseph's Hospital*, 11 Ida. 631, 83 Pac. 768; *Douville v. Pacific Coast Casualty Co.*, 25 Ida. 396, 138 Pac. 506.)

G. H. Martin, for Respondent.

The issuance of a policy with knowledge of the falsity of statements warranted to be true or with knowledge of the breach of any condition precedent to the taking effect of the policy is a waiver. (25 Cyc. 865; *Allen v. Phoenix Assur. Co.*, 14 Ida. 728, 95 Pac. 829; *Security Trust Co. v. Tarpey*, 182 Ill. 52, 54 N. E. 1041; *Kelly v. Metropolitan Life Ins. Co.*, 15 App. Div. 220, 44 N. Y. Supp. 179; *Iverson v. Metropolitan Life Ins. Co.*, 151 Cal. 746, 91 Pac. 609, 13 L. R. A., N. S., 866; *Pacific Mutual Life Ins. Co. v. Van Fleet*, 47 Colo. 401, 107 Pac. 1087; *Rome Ins. Co. v. Thomas*, 11 Ga. App. 539, 75 S. E. 894.)

The right of action for fraud in the procurement of a policy may be waived by inserting in the policy a provision that after a specified time the policy shall become incontestable, and this incontestable clause is valid after the stipulated period as against any defense based on false statements or untrue warranties, even though they were made fraudulently. (25 Cyc. 873; Elliott on Contracts, sec. 89.)

Where a company with knowledge of the facts, or with such knowledge as will put it upon inquiry to determine the facts, enters into such a contract as the defendant in this case did, agreeing not to contest the contract upon such a state of facts, the defendant becomes estopped by contract from relying upon such defenses as are set up in this case. (*Patterson v. Natural Premium Mut. Life Ins. Co.*, 100 Wis. 118, 69 Am. St. 899, 75 N. W. 980, 42 L. R. A. 253; *Insurance Co. v. Fox*, 106 Tenn. 347, 82 Am. St. 885, 61 S. W. 62.)

SULLIVAN, C. J.—This action was brought by the widow of the insured, as beneficiary, to recover upon a policy of

life insurance issued by the appellant company and delivered about the 10th of December, 1913, to the deceased, Luther F. Duvall, who died about the 14th of March, 1914. A copy of the insurance policy, which was for $2,000, is attached to the complaint and made a part thereof, $100 having been paid thereon.

The prayer is for judgment for $1,900 with interest and costs.

The answer denied liability and set up five affirmative defenses, alleging false and fraudulent answers made by the deceased to material questions contained in his application and in the examination by the medical examiner; that the answers were made with intent to defraud the company, were believed and relied upon by the company, were material and known by the deceased to be untrue; that the truth of the statements was warranted by the deceased and was a consideration for the contract, and that such falsity and fraud rendered the policy null and void; that the deceased when making application for the policy, and when examined by the defendant's medical examiner, and when he received the policy, had tuberculosis of the lungs and had had such disease for a long time prior to his said application, and from which disease bronchial pneumonia developed, from which the insured subsequently died; that the appellant had offered to return to the plaintiff the $111.94, together with interest from the date of payment.

To this answer and each affirmative defense the plaintiff interposed a demurrer upon the ground that the facts stated in said answer and defenses did not constitute a defense to the plaintiff's cause of action. Said demurrer was sustained by the court and the defendant refused to plead further.

Upon the facts found the court entered judgment in favor of the plaintiff for $1,900, with interest and costs of suit. The appeal is from the judgment.

The policy contained the following incontestable clause: "This policy is incontestable from its date, except for nonpayment of premiums."

The only point involved on this appeal is the right of defendant to set up and prove fraud committed by the plaintiff in making material and false warranties and statements in his application for the policy, and whether this incontestable clause deprives the defendant of the right to set up the defense of fraud.

It will be observed that it is provided that said policy was incontestable from its date, with the one exception, namely, for the nonpayment of premiums.

Sec. 42 (Sess. Laws 1911, p. 732) of an act relating to the insurance department in and for the state of Idaho, as amended by Laws of 1913, p. 406, provides, among other things, as follows: "That the policy, so far as it relates to life or endowment insurance, shall be incontestable after two (2) years from its date of issue, except for nonpayment of premiums, and except for violation of the conditions of the policy relating to military or naval service in time of war."

The latter exception is not involved in this case.

Under the provisions of said statute, the contestability of the policy is limited to two years, but that does not prevent the parties from contracting that the period of contestability shall be less than two years, or from agreeing that the policy shall not be contestable after it is delivered. It does, however, prohibit the parties from extending the time of contestability beyond two years.

In 25 Cyc., at p. 873, it is stated as follows: "A clause, now often inserted in policies, that after being in force a specified time they shall not be disputed or shall be incontestable precludes any defense after the stipulated period on account of false statements which were warranted to be true, even though they were made fraudulently."

The policy under consideration is stipulated to be absolutely incontestable from its date, except for nonpayment of premiums and for violation of the condition of the policy relating to military and naval service in time of war.

It was held in *Patterson v. Natural Premium Mut. Life Ins. Co.,* 100 Wis. 118, 69 Am. St. 899, 75 N. W. 980, 42 L. R. A. 253, under an incontestable clause such as in the case at bar, that

in determining the rule that should be adopted by the court
there were numerous considerations which deserve attention;
that it must be borne in mind that the suicide clause has be-
come so universal in policies that its absence at once attracts
attention; that it can hardly be otherwise than that the agent
soliciting insurance under such a policy as the one under
consideration would at once call attention to this apparent
liberality in that there was no suicide clause, and further,
that there was in addition an absolute incontestable clause
and that the average layman, not to say lawyer, in looking
it over would conclude that it was in fact a very favorable
policy to the insured; that such provisions were all carefully
framed by the insurance company and expressly framed to
induce people to insure; that it is a familiar rule of con-
struction that where an insurance policy is capable of two
meanings, that which is the more favorable to the insured
should be adopted; that it was claimed by the defendant in
that case that the evidence tended to show a fraudulent scheme
on the part of Patterson when he took out his policy, to
obtain insurance on his life for the purpose of thereafter
committing suicide and defrauding the company for the
benefit of his children; that doubtless this would be a good
defense, if shown, unless it was cut off by the incontestable
clause; that it should be a defense not based on suicide alone;
but on the whole fraud of which the act of suicide was only
the ultimate step, but that the difficulty was that that court
had been unable to find any evidence which would justify the
submission of that question to the jury; that it is said that
the insured falsely represented his state of health in his ap-
plication and concealed some of the grounds upon which he
had previously made application for a pension; that there
does not seem to be much merit in this claim; that he sub-
mitted himself for examination to the company's medical ex-
aminer, who reported that he had dyspepsia and was a
second-class risk; that the company had full notice that he
was not in first-class health, because the insured stated in
his application that he had dyspepsia and had had malaria
and had applied for a pension on the ground that he had

indigestion brought on by exposure in the army; that the incontestable clause would seem to effectually bar this defense; that if said incontestable clause be not altogether a glittering generality, put in for no other purpose than to induce men to insure, it would seem that it must cover such misstatements or omissions as are alleged; that no reason appears why an insurance company may not take the risk of ascertaining for itself the condition of the health of the insured.

We think the above suggestions in the Patterson case apply with force to the facts of this case. The physician of the insurance company examined the defendant and reported that he was not a first-class risk by reporting simply that he was a "good risk," when he was required to report whether the applicant was a "first-class risk," a "good risk" or only a "fair risk"; that there were symptoms of asthma, etc., and recommended that said application for insurance in the amount of $3,000 be reduced to $2,000, and that a policy issue for that amount, which was done.

The copy of the plaintiff's application for insurance contained in the record shows that he applied for only $2,000 insurance, but the report of R. G. Dun & Co. sent to the insurance company, and the report of the company's physician, Dr. T. C. Witherspoon, both show that the application was for $3,000, and that it was reduced to $2,000. The certificate of the chief medical director contains the following indorsement: "Will accept 2000. 20 End. G. C. R. (Signed) T. C. Witherspoon." And immediately following is this indorsement: "Accepted Dec. 4, 1913. (Signed) T. C. Witherspoon." Immediately following the medical examiner's indorsement, A. T. Morgan made the following indorsement: "No inspection necessary. Issue Policy. Date Dec. 5, 1913. (Signed) A. T. Morgan, General Manager."

It was also contended by counsel for respondent on the oral argument of the case that the application was for $3,000 and that it was reduced to $2,000, and that oral statement was not denied by counsel for appellant.

The insurance company had the application for the policy; it had its resident medical examiner's report on the health of the applicant; it had the report of R. G. Dun & Co. as to the financial standing of the applicant, and it also had the chief medical examiner's certificate and indorsements, as above stated. The company was evidently fully advised as to the condition of the health of the insured, and they issued the policy containing the incontestable clause above quoted.

As was suggested in the Patterson case, no reason appears why the insurance company may not take the risk of ascertaining for itself the condition of the health of the insured. The company had full notice that the insured was not in first-class health, and refused to issue him a policy for the amount for which he applied. The incontestable clause of the policy was evidently carefully framed by the company itself and expressly framed to induce people to insure, and reserved the right to contest a recovery on the policy on only one ground, aside from the military or naval one, and that was a failure to pay the premiums. If the insurance company intended by the incontestable clause to except the ground of fraud in the procurement of the policy, why did it not include it the same as it did the clause in the case of failure to pay premiums and in case of suicide within a year after the policy issued?

It was held in *Insurance Co. v. Fox,* 106 Tenn. 347, 82 Am. St. 885, 61 S. W. 62, that a condition in a life insurance policy that it shall be incontestable for fraud in the application therefor, or in the medical examination preceding it, is not void as against public policy.

In the case at bar the insurance company has agreed not to contest the policy on any ground except those included in the incontestable clause, which we think the company had a right to do. It was stated in the Fox case *supra,* that if fraud may be waived at all, certainly the parties may stipulate the grounds on which the waiver may be made. It is clear to us that they may fix the conditions upon what incontestability may rest. They may agree that nonpayment of premiums may be the only ground of contest, and they may also

agree that such incontestable provision may take effect from the date of the delivery of the policy. Had the insurance company desired to reserve the right to contest for fraud, it was its duty to specify fraud as one of the grounds of contest.

So far as the health of an applicant for life insurance is concerned, the insurance company has competent physicians to thoroughly examine such applicants, and it is the company's duty, before issuing its policy, to thoroughly satisfy itself as to his physical condition. It is well recognized that many people have ailments that they know nothing of and that might have a tendency to make such applicant more readily subject to attacks of pneumonia and other diseases. The record shows that the insured died of pneumonia, and it is a well-recognized fact that pneumonia often attacks the most robust of men and causes their death in a very short time.

While we are aware that there are many authorities that hold that an incontestable clause, although not specifying fraud as one of the grounds of contest, if that were included, such provision would be void as against public policy, we are not in accord with that line of decisions but are in accord with the rule laid down in the Patterson case, *supra,* and other cases which hold that misstatements or omissions of the insured respecting his health are covered by the incontestable clause in the policy, where it is provided that the policy is incontestable except for default in the payment of premiums.

We therefore conclude that the judgment of the district court must be affirmed, and it is so ordered, with costs in favor of the respondent.

Budge, J., concurs.

MORGAN, J., Dissenting.—It appears to me the foregoing decision violates some elementary principles of law. We must not overlook the fact that the case has not been tried upon its merits; that it was decided upon demurrer to the answer, and that the answer properly and sufficiently alleged fraud upon the part of the insured whereby he procured appellant to issue to him the policy of life insurance which

forms the basis of this action.    This state of facts invites the
application of the fundamental rule that the demurrer admits
all matters of fact which are sufficiently pleaded.    (Bouvier's
Law Dict., Rawle's Third Rev., 841.)    So, although life in-
surance companies have competent physicians to thoroughly
examine an applicant, and although it is the company's duty
before issuing its· policy to thoroughly satisfy itself as to his
physical condition, and although it is well recognized that
many people have ailments they know not of that might have
a tendency to make them subject to attacks of pneumonia
and other diseases, and although it is a well-recognized fact
that pneumonia often attacks robust men and causes death in
a very short time, nevertheless, for the purposes of this case,
it must be taken as admitted that insured, knowingly and
purposely, tricked and defrauded appellant into entering into
the contract here sued upon, and that it would not have en-
tered into it had it not been so tricked and defrauded.    Since
the fraud is admitted by the demurrer, its effect upon the
contract is stated in another fundamental rule as follows:
"It may be laid down as a general rule that any false rep-
resentations of a material fact, made with knowledge of its
falsity, and with intent that it shall be acted upon by another
in entering into a contract, and which is so acted upon, con-
stitutes fraud, and will entitle the party deceived thereby to
avoid the contract or to maintain an action for the damages
sustained."    (9 Cyc. 411.)

Since the application for insurance, the report of the ex-
amining physician, the report of R. G. Dun & Company, and
the report of certain officials of the insurance company which
appear as exhibits attached to the answer, are commented
upon in the opinion, and the contents thereof are apparently
acted upon by the majority of the court as established facts
tending to show that appellant was not defrauded, the ad-
mission made by the demurrer notwithstanding, it might be
well to call attention to another rule which has been hereto-
fore considered settled in this state, to the effect that plead-
ing an instrument by attaching a copy to a complaint or an
answer as an exhibit thereto does not tender an issue or

involve an assertion of the truth of the statements and recitals contained in the exhibit. (*Sweeney v. Johnson*, 23 Ida. 530, 130 Pac. 997; *Schultz v. Rose Lake Lumber Co.*, 27 Ida. 528, 149 Pac. 726.) Therefore, the statements of purported facts recited in these exhibits cannot be taken as allegations, or weighed as evidence, with a view to disproving the fraud, even though the demurrer do not admit it, which it does.

The case of *Patterson v. Natural Premium Mut. Life Ins. Co.*, quoted from at some length in the majority opinion, does not appear to be in point. That case was tried upon the merits, and the defense was that the insured, while sane, committed suicide. The court held that suicide, while sane, does not avoid a life insurance policy in the absence of the provision therein to that effect, but, speaking of the contention that the evidence tended to show a fraudulent scheme on the part of the insured, when he took out his policy, to obtain insurance on his life for the purpose of thereafter committing suicide and defrauding the company for the benefit of his children, the court said: "But the difficulty is that we have been unable to find any evidence which would justify the submission of that question to the jury." In the case at bar that difficulty does not arise; the demurrer admits the fraud and admits that it was by means of fraud the issuance and delivery of the policy were procured.

Another rule generally accepted and applied throughout the United States is: A provision in a contract of life insurance that it shall be incontestable from date is void, as against public policy, so far as it tends to exclude the insurer from contesting upon the ground of fraud in procuring the contract. (*Welch v. Union Cent. Life Ins. Co.*, 108 Iowa, 224, 78 N. W. 853, 50 L. R. A. 774; *New York Life Ins. Co. v. Weaver's Admr.*, 114 Ky. 295, 70 S. W. 628; *New York Life Ins. Co. v. Hardison*, 199 Mass. 190, 127 Am. St. 478, 85 N. E. 410; *Reagan v. Union Mut. Life Ins. Co.*, 189 Mass. 555, 109 Am. St. 659, 76 N. E. 217, 2 L. R. A., N. S., 821, 4 Ann. Cas. 362.) The application of this rule ought not to be questioned, much less denied, in Idaho, where the policy of the law has been expressed in the statutes and the length of

time within which such contracts are contestable has been definitely fixed.

Sec. 42, chap. 228, Sess. Laws 1911 (p. 748), as amended by sec. 22, chap. 97, Sess. Laws 1913 (p. 406), provides what shall be contained in certain policies of insurance, and one of the provisions to be so included is to be found in subdivision second of said section and is as follows: "That the policy, so far as it relates to life or endowment insurance, shall be incontestable after two (2) years from its date of issue, except for nonpayment of premiums, and except for violation of the conditions of the policy relating to military or naval service in time of war." Subd. 4 of sec. 46, chap. 228, Sess. Laws 1911 (p. 753), is as follows: "No company or agent shall issue or deliver in this state any policy which conflicts with any provision of this act. A policy issued in violation of this act shall be held valid and shall be construed as provided in this act, and when any provision in a policy is in conflict with any provision of this act, the rights, duties and obligations of the company and policy-holder and the beneficiary shall be governed by the provisions of this act."

The legislative intent that a policy of life or endowment insurance shall be read and construed to provide that it shall be incontestable after two years from its date, other than for the causes by law expressly excepted, regardless of what may be recited in the contract attempting to fix a longer or shorter period of time, and that the two years' provision expressed in the statute shall govern the rights, duties and obligations of the *company* and *policy-holder* and *beneficiary*, and that the recitations in the contract to the contrary shall not govern them, is so clearly expressed that it ought to successfully resist and withstand all effort to place any other construction upon it.

If any more law is needed to guide us to a correct decision of the sole question in this case, which is stated in the majority opinion in effect to be, whether the incontestable clause in the policy deprives appellant of the right to set up the defense of fraud, it is to be found in sec. 3321, Rev. Codes, which is as follows: "Every stipulation or condition in a

contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void.''

I am forced to conclude that the clause in the contract of insurance attempting to make it incontestable from its date is in conflict with the policy of the law as expressed in the statutes above quoted, and that it is void; also, that the case should be brought to trial upon its merits with a view to determining the truth or falsity of the allegations of fraud contained in the answer.