748 P.2d 392

**Mary MAXWELL, Plaintiff–Appellant,**

v.

**CUMBERLAND LIFE INSURANCE COMPANY, a Tennessee corporation, Defendant–Respondent.**

No. 16738.

Supreme Court of Idaho.

Dec. 9, 1987.

Steiner & Lee, E. Scott Lee argued, Lewiston, for plaintiff-appellant.

Ware, O'Connell & Creason, Daniel W. O'Connell argued, Lewiston, for defendant-respondent.

BAKES, Justice.

Mary Maxwell (Maxwell) sued Cumberland Life Insurance Company (Cumberland) to collect proceeds under a credit life policy. Cumberland moved for summary judgment, arguing that "no coverage was actually in effect." The district court granted Cumberland's motion. Maxwell appeals. We reverse and remand for further proceedings.

Appellant's husband, Daniel R. Maxwell, and appellant applied for and were granted a loan by Associates Financial Services Company (Associates) of Lewiston, Idaho, on September 25, 1981. The amount of the

loan granted on that date was $14,290.59. $5,049.65 of it was "rolled over" from a pre-existing loan; $9,240.94 was "new money." (The note executed by Maxwell included $13,093.41 in finance charges, payable over the term of the note, the total sum being $27,384.)

At the time of the loan, the Maxwells also applied to Cumberland for group credit life insurance in an amount equal to their total indebtedness with Associates, including finance charges. In the application for insurance, Dan Maxwell stated his date of birth as August 30, 1920. In fact, it was four years earlier, August 30, 1916.

The Maxwells received a Cumberland certificate of insurance effective September 26, 1981; its stated face amount was $27,384. Among the certificate's general provisions was an "Age Limit" clause which read as follows:

> "**Age Limit**: If the spouse has attained the age of 65 on or before the inception date of the indebtedness, such spouse is not eligible for insurance hereunder and no insurance is effective hereunder. If the obligor has attained the age of 65 on or before the inception date of the indebtedness, neither the obligor nor the spouse is eligible for insurance hereunder and no insurance is effective hereunder."

Maxwell was over age 65 at the time of application, but because he had understated his age his application was accepted.

The policy also contained an "incontestability" clause, which read as follows:

> "**Incontestability**: This Certificate of Insurance shall be incontestable except for nonpayment of premiums, after it has been in force for two years during the life time of the Insured Obligor and the Insured Spouse. No statement made by an obligor shall be used in any contest unless such statement is contained in a written application for insurance signed by the obligor."

On June 27, 1984, more than two years after the Certificate of Insurance was issued, Dan Maxwell died. Appellant submitted a claim to Cumberland for life insurance benefits, but it was denied because Dan Maxwell "was ineligible for credit life insurance coverage when he applied for it on September 25, 1981"; on that date he was over age 65.

Maxwell filed suit. Cumberland moved for summary judgment, contending that "no coverage was actually in effect." The district court granted Cumberland's motion. This appeal followed.

I

■ The resolution of this case turns on whether or not the two-year incontestability clause prevents Cumberland from contesting the validity of the Maxwells' insurance certificate because Dan Maxwell misstated his age. I.C. § 41–2012 explicitly states:

> "[T]he validity of the [group life insurance] policy shall not be contested, except for nonpayment of premium, after it has been in force for two (2) years from its date of issue; and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two (2) years during such person's lifetime nor unless it is contained in a written instrument signed by him."

Were we writing on a clean slate, it would certainly be a reasonable interpretation of the statute to conclude that the validity of the certificate cannot now be contested. Both the incontestability clause contained in the Maxwells' certificate and the facts of the instant case meet the explicit provisions of the first part of I.C. § 41–2012; *i.e.*, the Maxwells' policy was in force for more than two years from its date of issue. Therefore, seemingly, its validity cannot be contested except for nonpayment of premiums.

However, we are not writing on a clean slate. Cumberland argues, and the trial court agreed, that the Maxwells' certificate was void *ab initio*, citing *Pond v. Mutual Benefit Ass'n*, 81 Idaho 38, 336 P.2d 314

(1959), and therefore there was no policy for the "incontestability" clause to apply to. The *Pond* case seems to support that argument. However, the *Pond* case is distinguishable for at least two reasons. First, none of the cases cited in *Pond* for the proposition that "the incontestability clause presupposes a valid contract and not one void *ab initio*" is factually similar to the instant case. And secondly, *Pond* dealt with a mutual benefit association, whereas Cumberland is a for-profit stock insurance company. There is an appreciable difference between the two, as will be demonstrated below.

Regarding the authorities relied on by the Court in *Pond* for the proposition that "The incontestability clause presupposes a valid contract and not one void *ab initio*," the Court cited Corpus Juris Secundum and four individual cases. 81 Idaho at 42, 336 P.2d at 316. The first two cases, *Obartuch v. Security Mutual Life Ins. Co.*, 114 F.2d 873 (7th Cir.1940), *cert. denied*, 312 U.S. 696, 61 S.Ct. 730, 85 L.Ed. 1131 *reh'g denied*, 312 U.S. 716, 61 S.Ct. 824, 85 L.Ed. 1146 (1941), and *Ludwinska v. John Hancock Mutual Life Ins. Co.*, 317 Pa. 577, 178 A. 28 (1935), deal with imposters. In both cases an imposter tried to obtain life insurance as if he were another person. Obviously, such circumstances render any ensuing contract void *ab initio*, but such are not the facts in the instant case.

The third case, cited by C.J.S. as authority for the above quoted language, is *Harris v. Travelers Ins. Co.*, 80 F.2d 127 (5th Cir.1935). In *Harris* the insurer was held not liable on an insurance policy which was merely loaned to the prospective insured for inspection and which was not to take effect until the premium was paid. No premium was ever paid. The court concluded that incontestable clauses are not effective when the policy is clearly shown never to have been approved and accepted by the insured in his lifetime. Again, this is not like the case at bar.

The next case cited by *Pond* is *Fisher v. United States Life Ins. Co. In City of New York*, 145 F.Supp. 646 (D.Md.1956), *aff'd*, 249 F.2d 879 (4th Cir.1957). *Fisher* interpreted New York law; the highest court in New York has rendered a more recent contrary decision. *See Simpson v. Phoenix Mutual Life Ins. Co.*, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969). Accordingly, the 4th Circuit's opinion can no longer be considered authoritative.

The final case cited by *Pond* for the proposition that "the incontestability clause presupposes a valid contract and not one void *ab initio*," is *Hall v. Missouri Ins. Co.*, 208 S.W.2d 830 (Mo.Ct.App.1948). Its applicability, too, is in question because: (1) *Hall* does not involve group insurance; and (2) it relies on *Langan v. United States Life Ins. Co.*, 344 Mo. 989, 130 S.W.2d 479 (1939), which holds that the incontestability clause does not prevent the application of an "age adjustment clause," a situation not involved in the instant case. Thus, all the authority relied on in *Pond* is distinguishable. Neither *Pond*, nor the cases cited therein, are compelling precedent in contending that the Maxwells' contract was void *ab initio*.

The second distinction between *Pond* and the instant action is that a mutual benefit association was involved in *Pond*, whereas here Cumberland is a for-profit stock insurance company. The thrust of *Pond's* analysis revolves around mutual benefit associations, their enabling statutes, and the bylaws, constitution and other instruments involved in the acquisition of mutual benefit association life insurance. To quote from *Pond*, "It has been generally held that where the constitution or by-laws of such an association fix the insurable age limits, a false statement of age by one beyond such fixed age will avoid the risk...." 81 Idaho at 43, 336 P.2d at 316. This is further emphasized by *Pond's* inclusion of quotes from the association's bylaws and policy of insurance. For instance, the bylaws in effect when Pond applied for the insurance provided:

"Members. All persons are eligible to become members of the life division of the Association who are ... at the date of approval of the application for membership, ... between the ages of 1 and 50 years."

Thus, there was more involved in *Pond* than just applying for an insurance policy; membership in an association was the threshold issue. This is further demonstrated by another policy provision:

"Qualification

"This policy is issued with the understanding that the applicant is within the age limits ... in accordance with the age limits of the Association on the date benefits become effective,...."

Why should a mutual benefit association be concerned about the age of new members? Because the addition of new members affects the liability and the interrelationships of existing members. More specifically, should the association have unfavorable mortality experience (which overaged insureds could cause), it could be forced to increase the existing members' assessment fees. *See* I.C. § 41-3013(3), "In the event the benefit fund of any association falls below the required amount, ... then such association shall forthwith levy an assessment upon all the members of the association for an amount sufficient to restore the benefit fund to the minimum amount provided herein." [1]

Accordingly, one reason for the Court reaching the result it did in *Pond, i.e.*, that adverse mortality experience can affect the liability of an association's existing members, is not present in the instant action. Here Cumberland has set the premium payable by the Maxwells and other members of the risk pool (*i.e.*, the other people insured by Cumberland), and the existing insureds' premiums will not be adversely affected by the mortality experience of new members. Accordingly, while in a mutual insurance setting there may be justification for concluding that a prospective insured must comply with the constitution and by-laws of the association prior to becoming an insured member of such association, thus justifying the "void *ab initio*" analysis of the *Pond* case, that analysis loses much of its force in a non-mutual insurance setting.

To apply the rule announced in the *Pond* case to other than mutual insurance settings would appear to violate the legislative policy set out in I.C. § 41-2012, which specifically provides that "the validity of the policy shall not be contested, except for nonpayment of premium, after it has been in force for two (2) years from its date of issue; ...." In addition to the foregoing legislative policy, I.C. § 41-2012 contains the following two directives: (1) any statement by an insured which is used by an insurer to contest the validity of his insurance must be contained in a written instrument signed by the insured; and (2) no such written statement shall be used to contest the validity of the insurance after said insurance has been in force for two years during the insured's lifetime. Here a written statement of the insured is relied upon, it being the application of Mr. Maxwell stating that he was born on August 30, 1920. Nevertheless, I.C. § 41-2012 prohibits using that statement to contest the validity of Mr. Maxwell's insurance because his insurance was in force prior to this contest for a period of two years during his lifetime.

The purpose of an incontestability clause is to require the insurer to investigate and act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured. It prevents the insurer from lulling the insured into a sense of security, only to litigate the issue later, possibly after the death of the insured. 18 Couch, *Cyclopedia of Insurance Law* § 72:2 (2d ed. 1983). Incontestability clauses preclude any defense after the stipulated period on account of false statements in the application for the policy. *Duvall v. National Ins. Co. of Montana*, 28 Idaho 356, 154 P. 632 (1916). Since the two year period has run in the instant case, all defenses premised on false statements in the application are precluded.

Our decision in this case is not novel. Similar cases from three other jurisdictions support this analysis. *Estate of Daniel v.*

---

**1.** Chapter 30, Title 41, of the Idaho Code, regarding mutual benefit associations, was repealed by 1987 Idaho Session Laws, ch. 78, p. 149.

*Ford Life Ins. Co.*, 270 So.2d 175 (La.Ct. App.1972), *writ refused*, 273 So.2d 42 (La. 1973), was an action to recover proceeds due under a credit life policy. The deceased (Daniel) purchased a new car and simultaneously bought credit life insurance from Ford Life Insurance Company (Ford Life). Daniel represented his age to be less than 65 years when, in fact, he was more than 65 years of age. He died more than one year after the issuance of the certificate of insurance.

On its fact, the certificate stated the maximum age for insurance to be 65 years. The following language also appears:

> "You are not eligible for this insurance if on or before the date of indebtedness you have passed the maximum age shown above, unless such indebtedness results from the renewal or refinancing of a previously insured indebtedness."

After Daniel's death, demand was made for payment under the policy. Ford Life refused payment because the proofs of loss showed the misstatement of age referred to above. Plaintiff sued under the policy, which also contained the following pertinent provisions:

> "[N]o ... statement will be used in any contest unless it is contained in the Application signed by the Creditor, or in a written instrument signed by the Debtor.... This policy will be incontestable after one year from its effective date, except for nonpayment of premiums. No statement made by any insured Debtor or will be used in any contest of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of one year during the Debtor's lifetime.
> "14. Misstatement Of Age: If the age of any insured Debtor has been misstated, there will be an equitable adjustment of the premium or amount of insurance hereunder, if applicable. [Note: I.C. § 41–2015 mandates a similar provision in policies sold in Idaho.] [2] If on the

basis of his correct age the Debtor is not eligible for insurance hereunder with respect to any indebtedness, the liability of Ford Life would be limited to refund of any premium paid by the Creditor with respect to such indebtedness for credit to the account of the Debtor." 270 So.2d at 176.

The court noted that once the incontestability period has run, defenses are no longer available unless the grounds are excepted by the terms of the policy. The incontestability clause creates a short term within which the insurer, if ever, must test the validity of his policy. Defenses are barred when the policy becomes incontestable, except where they are specifically preserved in the incontestability statute or clause, even when the defense is based on a denial of coverage. "In other words, all defenses not specially excepted in the clause making the policy incontestable are barred when the period of time fixed in the incontestability clause has elapsed." *Id.* at 177, *quoting Garrell v. Good Citizens Mutual Benefit Ass'n*, 204 La. 871, 16 So.2d 463, 465 (1943). The court then made a statement which can be applied to the case at bar today: "In this case, we have an insured who, had he given his correct age, would not have been issued the policy. We view the defense tendered here [misstatement of age in procurement of the policy] as one which relates to the validity of the policy *ab initio*. Such a defense is precluded by the incontestability clause...." 270 So.2d at 177.

The Supreme Court of California, sitting *en banc* is in accord. In *New York Life Ins. Co. v. Hollender*, 38 Cal.2d 73, 237 P.2d 510 (1951), it is stated:

> "It is generally held that the incontestable clause, after the lapse of time it specifies, prevents nullification of the insurance contract for any cause not excepted in the clause. ... [A] contest of the policy within the meaning of the 'incontestable clause' ... is ... a contest

---

2. **41–2015. Misstatement of age.**—"The group life insurance policy shall contain a provision specifying an equitable adjustment of premiums or of benefits or of both to be made in the event the age of a person insured has been misstated, such provision to contain a clear statement of the method of adjustment to be used."

against the terms of the policy for the purpose of destroying its validity....

"When an insurance policy by its provisions is made incontestable after a specified period, the intent of the parties is to fix a limited time within which the insurer must discover and assert any grounds it might have to justify a rescission of the contract. Accordingly, the insurer must make its 'contest of the policy' within the prescribed period.... ... The denial of liability under a policy by reason of fraud or misrepresentation in its procurement is the 'contest' which is governed by the incontestable clause...." 237 P.2d at 512–513 (citations omitted).

In *Arnold v. Equitable Life Assurance Society*, 228 F. 157 (S.D.Iowa 1915), it was held that the incontestable clause precluded the insurer from making a defense on account of a misstatement of the age of the insured in the application.

To follow the *Pond* decision in this circumstance and not apply the incontestable clause in this case, would not only be contrary to the incontestability statute, I.C. § 41–2012, but would also require a strained and unreasonable interpretation of the incontestability clause in Maxwell's policy. That clause provides:

"**Incontestability**: This Certificate of Insurance shall be incontestable except for nonpayment of premiums, after it has been in force for two years during the life time of the Insured Obligor and the Insured Spouse. No statement made by an obligor shall be used in any contest unless such statement is contained in a written application for insurance signed by the obligor."

In construing insurance policies, as in the construction of other contracts, the entire contract is to be construed together for the purpose of giving force and effect to each clause. I.C. § 41–1822; *Anderson v. Title Ins. Co.*, 103 Idaho 875, 655 P.2d 82 (1982); *Casey v. Highlands Ins. Co.*, 100 Idaho 505, 600 P.2d 1387 (1979); *New York Life Ins. Co. v. Hollender, supra,* 237 P.2d at 514; 44 C.J.S. *Insurance* §§ 289 and 298 (1945).

We must give full force and effect to each clause of the Maxwells' policy. In doing so, we hold that Cumberland could have contested the validity of Dan Maxwell's coverage, but such contest should have occurred within two years after the policy first went into force. After two years have elapsed, defenses going to the validity of the coverage are no longer available. We see no basis for distinguishing age from health as it regards the incontestability clause and the risks assumed by the insurer, except when age precludes association membership, as in the *Pond* case. An applicant's health status and age both directly impact the risk assumed by the insurer. (We note that the Maxwells' application contained 13 questions regarding health status, as well as the one question concerning age.) Neither age nor health status is explicitly excepted by the Maxwells' incontestability clause; yet Cumberland would have us hold that age is more important and thus should be read into the exceptions to the clause. There is no reason shown for giving more status to age than health. A young man with heart disease may die just as readily as an old man may die from natural causes. Both health status and age are integral to the risk assumed by the insurer. We see no basis for exalting one over the other, as it regards the incontestability clause, when neither is explicitly excepted.

The principal function of an incontestability clause is to cut off defenses, such as misrepresentations, that go to the validity of the policy after the policy has been in force and effect for a period of time. *Duvall v. National Ins. Co. of Montana*, 28 Idaho 356, 154 P. 632 (1916); *National Life & Accident Ins. Co. v. Mixon*, 291 Ala. 467, 282 So.2d 308 (1973); Couch, *supra,* § 72:2. Incontestability clauses come into effect when the claim of the insurer relates to the validity of the policy. *Preferred Risk Life Ins. Co. v. Sande*, 421 So.2d 566 (Fla.Dist. Ct.App.1982); *Equitable Life Assur. Soc. v. First Nat. Bank of Birmingham*, 113 F.2d 272 (5th Cir.1940); Couch, *supra,* § 72:2. Here Cumberland has contested the validity of the policy. Accordingly, the

**814**

incontestability clause comes into effect, and it explicitly states that "[t]his Certificate of Insurance shall be incontestable except for nonpayment of premiums, after it has been in force for two years during the life time of the Insured Obligor and the Insured Spouse." We are not concerned with the nonpayment of premiums, and the certificate was in force for two years during the lifetimes of Mr. and Mrs. Maxwell. Therefore, the coverage is incontestable.

II

Our resolution of the above-delineated issues requires that we address Cumberland's final argument. Cumberland contends that, even assuming the incontestability clause was in effect, the Maxwells are prevented from recovery by I.C. § 41–1811.[3] Specifically, Cumberland contends that either subsection (b) or subsection (c) applies, if not both.

Cumberland's argument, applying I.C. § 41–1811 beyond the initial two year period, would render I.C. §§ 41–2012 and 41–2015[4] ineffective and non-existent. It is the first rule of statutory construction that statutes are to be interpreted, if possible, so as to give meaning to both and not have one nullify the other. *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984); *North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County*, 94 Idaho 644, 496 P.2d 105 (1972); *Christensen v. West*, 92 Idaho 87, 437 P.2d 359 (1968). Applying I.C. § 41–1811 only to the first two years of coverage gives meaning and effect to all the statutes. Additionally, I.C. § 41–1811

is a general statute; it is found in Chapter 18, Title 41, of the Idaho Code, which has broad application to "all insurance contracts and annuity contracts" (with a few exceptions not pertinent here). I.C. § 41–1801. Sections 41–2012 and 41–2015, though, are contained in Chapter 20, explicitly applying "only to group life insurance." I.C. § 41–2001. It is also a general rule of statutory construction that the specific statute prevails, modifying the general statute. I.C. § 41–115; *State v. Wilson*, 107 Idaho 506, 690 P.2d 1338 (1984); *Mickelsen v. City of Rexburg*, 101 Idaho 305, 612 P.2d 542 (1980); *Kidd v. U.S. Dept. of Interior, Bureau of Land Management*, 756 F.2d 1410 (9th Cir.1985) (interpreting Idaho law). Accordingly, I.C. § 41–1811 applies, but only during the first two years of coverage.

III

The district court's granting of summary judgment for Cumberland was error; accordingly, we reverse and remand for further proceedings. The issue of the parties' asserted rights to attorney fees is to be addressed by the trial court on remand. *See* I.C. § 41–1839.

Reversed and remanded for further proceedings consistent with this opinion. Costs to appellant.

SHEPARD, C.J., BISTLINE and HUNTLEY, JJ., and TOWLES, J. pro tem., concur.

---

3. **41–1811. Representations in applications.**—All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, or would not

have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

4. **41–2015. Misstatement of age.**—The group life insurance policy shall contain a provision specifying an equitable adjustment of premiums or of benefits or of both to be made in the event the age of a person insured has been misstated, such provision to contain a clear statement of the method of adjustment to be used.